SMITH, Judge.
Health Quest sought a certificate of need (CON) to construct and operate a nursing home in Broward County. HRS denied the application on the grounds of lack of need and Health Quest requested an administrative hearing. Subsequent to the hearing but before entry of the recommended order, HRS granted a CON for 101 nursing home beds to Health Care and Retirement Corporation of America (HCRC). Since HRS had already allocated the 101 beds which were needed in Broward County to HCRC, the hearing officer recommended the denial of Health Quest’s application. At the same time, the hearing officer ruled that the factors relied upon by Health Quest to show that an “abnormal” [1] situation existed in Broward County, were already considered in Rule 10-5.11(21), Florida Administrative Code, and therefore did not justify a departure from the nursing home bed need methodology contained within the rule. Health Quest appeals, contending that the rulings by the hearing officer, which were adopted by HRS in its final order denying Health Quest’s application, were in error, and mandate reversal. We disagree, and affirm.
The parties agree that pursuant to the bed need methodology contained in Rule 10-5.11(21), that only 101 additional nursing home beds were needed in Broward County. HCRC’s application for a CON for these beds was received and processed in the batching cycle[2] preceding Health Quest’s batching cycle. Prior to the hearing in this cause, the administrative hearing on HCRC’s application had already been completed, and an order recommending that HCRC be granted a CON for the needed beds in Broward had been entered. After the granting of HCRC’s CON, there was no unprovided for bed need.
While it may have been a better practice for the hearing officer to determine the merits of Health Quest’s application based only on the facts adduced at the final hearing, without consideration of this post-hearing event, any error in this regard was harmless. Although the final order granting HCRC’s application for the beds in Broward County was not entered until after Health Quest’s hearing, we do not think HRS was required to ignore the impending grant of a CON to HCRC. Certainly HRS was entitled to recognize its own prior order granting a CON for the beds in Broward County to another party, HCRC, when it considered the hearing officer’s recommended order on Health Quest’s application.[3] Once HRS had allocated the *578 needed beds to HCRC, it was not possible to allocate the same beds to Health Quest.[4]
On appeal, Health Quest has inexplicably cited Bio-Medical Applications of Ocala, Inc. v. Office of Community Medical Facilities, Department of Health and Rehabilitative Services, 374 So.2d 88 (Fla. 1st DCA 1979), in support of reversal. BioMedical and the case upon which it relies, Bio-Medical Applications of Clearwater, Inc. v. Department of Health and Rehabilitative Services, Office of Community Medical Facilities, 370 So.2d 19 (Fla. 2d DCA 1979), recognize that when an applicant for a CON is able to show that the granting of a CON to another applicant would substantially prejudice its application, and the applications are mutually exclusive, fairness requires that HRS conduct a comparative hearing at which the competing applications are considered simultaneously. We fail to see the connection between the holdings in those cases and this case.
We note, as HRS observes, that the BioMedical case and its predecessor preceded the adoption of batching cycles by HRS, and that Bio-Medical’s discernment of the right of one CON applicant to be heard on the application of another was in relation to “mutually exclusive” applications. 374 So.2d at 89. Health Quest has made no showing that its application and the application of HCRC are “mutually exclusive.” See Judge Glickstein’s dissenting opinion in South Broward Hospital District v. Department of Health and Rehabilitative Services, 385 So.2d 1094, 1095 (Fla. 4th DCA 1980). As HRS appropriately notes, Health Quest was not a simultaneous or near simultaneous applicant to HCRC, since HCRC had applied in the earlier batching cycle. Accordingly, HRS followed its long-standing policy and the statutorily mandated “batching cycles” process, and awarded the beds to the applicant in the prior batching cycle.
Under the circumstances present in this case we find merely academic the parties’ arguments concerning Health Quest’s entitlement to comparative review of its application with that of HCRC.[5] Health Quest never sought comparative review in the proceedings below. Moreover, Health Quest failed to mount any attack on HRS’ non-rule policy giving priority to applications filed in preceding batching cycles.[6] Since these issues were not preserved for appellate review, this court is not in the position to order that any type of comparative review take place.
We have not overlooked Health Quest’s other point. Health Quest argued below that abnormal conditions existed in Broward County (District X) thereby warranting a deviation from the bed need methodology contained in Rule 10-5.11(21), and consideration of non-rule factors in determining need. Specifically, Health Quest sought to show: (1) Broward County (District X) has the fewest beds per capita of the eleven service districts in the state; (2) that Broward County has a greater number of medicaid patients per 1,000 indigent elderly than other counties, that these medicaid patients are not using nursing home beds in Broward County, and consequently the indigent elderly are not getting service in Broward County; (3) that the occupancy rate of 91.5% reported by HRS for Bro-ward County is misleadingly low and instead the occupancy rate is in excess of 95%; and (4) the population 75 + in Bro-ward County is growing faster than in the rest of Florida. We agree with HRS that these four factors are considered in the bed need methodology provided for in Rule 10- *579 5.11(21), and therefore do not justify a deviation from application of the methodology contained within that rule. To the extent that Health Quest may have been attempting to demonstrate the propriety of utilizing a different bed need methodology, we hold that HRS was not required to consider such evidence. See, Turro v. Department of Health and Rehabilitative Services, 458 So.2d 345 (Fla. 1st DCA 1984). Finally, any error in the hearing officer’s refusal to allow into evidence the Broward Regional Health Council’s district plan was harmless, since Health Quest sought to utilize the plan in conjunction with its impermissible collateral attack on the bed need methodology found in the rule.
The final order of HRS is AFFIRMED.
MILLS and THOMPSON, JJ., concur.

. Rule 10-5.1 l(21)(a), Florida Administrative Code.

. § 381.494(5), Fla.Stat. (1983); and Rule 10-5.-08, Florida Administrative Code.

. At the beginning of the administrative hearing, HRS requested the hearing officer to officially recognize the recommended order in HCRC’s administrative case. He did so without objection from Health Quest. Moreover, we observe that agencies may officially recognize certain facts, just as a court is permitted to judicially notice certain facts. 1 Fla.Jur.2d, Administrative Law, § 86, p. 672. A court may judicially notice its own actions and records, Section 90.202(5) and (6), Florida Statutes (1983), and we have no difficulty postulating that an administrative agency may recognize its own actions and orders.

. We note that Health Quest did not raise the hearing officer’s consideration of this post-hearing event in its exceptions to the hearing officer’s recommended order.

. Whether applicants in a later batching cycle are entitled to comparative review with applicants in earlier batching cycles has been said to be subject to "some difference of opinion." Federal Property Management Corporation v. Health Care and Retirement Corporation of America, 462 So.2d 493, 495 (Fla. 1st DCA 1984).

. This court has implicitly recognized a "priority” status based upon the time of application in Doctor’s Osteopathic Medical Center, Inc. v. Department of Health and Rehabilitative Services, 459 So.2d 1063 (Fla. 1st DCA 1984).