SHIVERS, Judge.
This is a consolidated appeal by appellants/petitioners Florida Living Care, Inc. (FLC) and Health Care and Retirement Corporation of America (HCRC) of a final order of the Department of Health and Rehabilitative Services (HRS) adopting the recommended order and denying petitioners’ applications for certificates of need. We affirm in part, reverse in part, and remand.
In July 1983, appellants filed separate applications for certificates of need, seeking to develop 120-bed nursing homes in Lake County, Florida. Both applications were denied. Appellants then filed petitions for formal administrative hearing pursuant to section 120.57, Florida Statutes, both amending their applications to 60-bed nursing homes. The petitions were consolidated and a final administrative hearing was held on August 21 and August 31, 1984. The primary issues at the hearing were (1) whether there existed a need for a 60-bed nursing home facility in the Lake/Sumter County subdistrict, and (2) if so, which of the petitioners would be better qualified to provide the service. The hearing officer determined in his recommended order that a need for additional beds in the subdistrict did not exist and, therefore, ad *791 dressed but did not resolve the second issue.
In determining that no need existed, the bed need methodology for community nursing homes, contained in Florida Administrative Code Rule 10-5.11(21) was utilized. The formula found in that rule consists basically of three parts, the third of which is the basis for the dispute in this appeal. First, the projected need for nursing home beds three years in the future is determined by multiplying a poverty ratio times the statewide bed need ratio, multiplying that product by the projected population aged 65 and older three years in the future, then subtracting the number of existing and approved nursing home beds in the subdistrict.[1] The hearing officer’s calculation of projected need for 591 additional nursing home beds by 1987 is not disputed. The second part of the formula determines the number of beds available for certificates of need once projected need has been determined. If Part 1 indicates a need for additional beds, as it does in this case, no new beds will be approved unless the average current utilization rate is 85% or higher.[2] Since the utilization rate in Lake and Sumter Counties consistently exceeded 90%, that threshold was met. The third step is to determine whether the additional beds being applied for may be added. According to Rule 10-5.11(21)(g), additional beds may be added “up to the point at which further bed additions would cause prospective utilization for the subdistrict to drop below the prospective base rates specified in (h).” The prospective base rate in the instant case is 80%.
The mathematical formula for the third step, above, requires determination of a factor known as “PC” or patient census. Although Rule 10-5.11(21)(g) defines PC as “the average patient census within the area during the most recent six month period prior to the filing of the CON application(s) under consideration for which the Department has data available,” the recommended order explained (and all parties agreed) that the customary practice is to define PC as “the average patient census during the most recent six-month period for which the Department has data available.” The disputed determination of the value of PC is the main issue of this appeal.
Several witnesses testified at the formal administrative hearing as to the value of PC. The Department’s expert witness (Mr. Jaffe) testified that, at the time of the hearing, the methodology indicated a need for 41 additional beds. In arriving at that figure, Jaffe utilized a PC based on data gathered by HRS regarding occupancy of Lake and Sumter County nursing homes for the months of January through June 1984. The data is contained in a quarterly nursing home report made from census reports voluntarily submitted to HRS by the eight nursing homes in the subdistrict. For January, February, and March, eight of the eight nursing homes reported their census. For April, May, and June, Jaffe stated that only seven of the eight nursing homes reported, the non-reporting nursing home being a 120-bed facility. Jaffe testified that the missing 120 beds were not counted in his calculation of 41, but admitted that the accuracy of the calculation could be affected, depending on the occupancy of the non-reporting facility.
Appellant HCRC presented the testimony of Ms. Early, an expert in the field of health care planning. Based on a PC for the six-month period of March through August, 1984, Early calculated that 85 beds could be added without dropping the utilization below 80%. Early’s March through June PC was based on HRS’ figures, August PC was based on a telephone survey conducted by Early in late August, and July PC was estimated by assuming the PC to be identical to that in June. Appellant FLC’s expert witness (Mr. Harkins) testified that 67 beds could be added to the subdistrict before the prospective base rate would drop below 80%.
*792 Despite the three different figures arrived at by the parties’ expert witnesses, the hearing officer concluded that no beds were .available for certificates of need. In reaching this conclusion, the officer used the January through June HRS nursing home reports to arrive at a PC of 715. The recommended order discussed the relative qualifications of the two petitioners but, since the officer concluded that no need existed, the order recommended both applications be denied. The appellants filed a notice of supplemental authority and/or motion to supplement the record after HRS released, on 12/1/84, a semiannual nursing home census report and bed need application report showing a need for 196 additional beds in the Lake/Sumter subdistrict. The Department's final order denied appellant’s motion to supplement the record and adopted the hearing officer’s recommended order. From that final order the appellants appeal, raising several issues.
First, appellants argue and we agree that the hearing officer erred in basing his determination of PC on HRS’ January through June 1984 data, since one 120-bed nursing home facility failed to report its census for three of the six reporting months. As a result, the hearing officer’s finding of zero need was not based on competent substantial evidence. We do not agree, however, with appellants’ suggestion that the hearing officer should have utilized the March through August data compiled by Ms. Early. Although those figures covered a more recent six-month period prior to the hearing, the fact that Early's July census was estimated from the June figures, and that the August census was taken at a different time of the month than the March through June census, indicates that those figures are as questionable in their accuracy as the January through June report. Since the hearing officer’s fact-finding was not based on competent substantial evidence, we set aside the agency’s finding of zero bed need and remand for the bed need methodology to be reapplied, using a complete census report for the months of January through June. Section 120.68(10), Florida Statutes.
Second, we do not agree with appellant FLC’s contention that the Department erred in denying its motion to supplement the record. The December 1984 HRS report was based on both an amended version of the bed need methodology contained in Rule 10-5.11(21) and on census data gathered for the months of April through September 1984. As this court held in Florida Department of Transportation v. J.W.C. Company, Inc., 396 So.2d 778 (Fla. 1st DCA 1981), section 120.60(2), Flor0ida Statutes, does not compel an agency to accept additional information or evidence after a formal section 120.57(1) hearing. Therefore, we affirm the portion of the final order denying the motion to supplement record.
Third, appellant FLC argues that extenuating circumstances in the Lake/Sumter subdistrict warrant a finding of need apart from the bed need methodology. Specifically, FLC referred to (1) the fact that the recently licensed nursing homes in the area were experiencing rapid fill-up; (2) the high occupancy rate for all nursing homes in the subdistrict at the time of the hearing and for the six months prior thereto; and (3) the high percentage of individuals aged 75 and older in the subdistrict. We agree with the Department that these factors are already taken into account by the bed need methodology and do not therefore warrant a deviation from the application of the methodology. See Health Quest Realty XII v. Department of Health and Rehabilitative Services, 477 So.2d 576 (Fla. 1st DCA 1985).
Last, in the recommended order the hearing officer considered the relative qualifications of the two appellants but, since he determined that no need existed, no recommendation was required as to whether one or both appellants would be granted a certificate of need. On remand, if the hearing officer finds that a need does exist for additional beds in the subdistrict, a recommendation must also be made as to which of the appellants is better qualified to provide the needed services.
*793 Accordingly, we affirm in part, reverse, and remand for the hearing officer (1) to reapply the bed need methodology relying on competent substantial evidence of patient census for the months January through June 1984, and (2) assuming that a need is found to exist, to determine which of the appellants is best qualified to provide the needed services.
JOANOS and NIMMONS, JJ., concur.

. Florida Administrative Code Rule 10-5.-ll(21)(b).

. Florida Administrative Code Rule 10-5.-ll(21)(e)l, (f)l.