75589. AMERICAN MEDICAL INTERNATIONAL, INC.
v. CHARTER LAKE HOSPITAL, INC. et al.
75590. CHARTER LAKE HOSPITAL, INC. v. AMERICAN
MEDICAL INTERNATIONAL, INC.
(366 SE2d 795)

SOGNIER, Judge.

The State Health Planning Agency (SHPA) approved the application of American Medical International, Inc. (AMI) for a Certificate of Need (CON) to add 24 adult psychiatric beds at McIntosh Trail Regional Medical Center in Griffin, Georgia. Charter Lake Hospital, Inc. (Charter), a psychiatric hospital in Macon, Georgia, appealed this decision to the State Health Planning Review Board (the Board), which, after hearings, affirmed the SHPA's issuance of the CON. Charter then sought judicial review of the Board's decision. The Superior Court of Bibb County rejected one of Charter's claims of error, but reversed the Board's decision on another ground alleged by Charter. AMI appeals from the Superior Court's reversal of the Board's decision, and Charter cross-appeals from the Superior Court's other ruling.

Georgia law requires that a CON be obtained prior to the development of any new institutional health service. OCGA § 31-6-40. Applications are submitted to and reviewed by the SHPA, which determines whether a CON should be issued, in accordance with the criteria set forth in the applicable statute, OCGA § 31-6-42, and with any applicable rules. Parties aggrieved by the decision of the SHPA may request an appeal hearing before a three-member panel of the Board. OCGA § 31-6-44. The decision of the Board then becomes the "final agency decision" for purposes of judicial review in accordance with the Georgia Administrative Procedure Act, OCGA § 50-13-1 et seq. and 31-6-44 (g).

1. The key question governing the issuance of a CON is whether the proposal fills a need, since the purpose of State Health Planning in general, and of mandatory review of proposed new institutional health services in particular, is that such services "should be provided in a manner that avoids unnecessary duplication of services, that is cost effective, and that is compatible with the health care needs of the

various areas and populations of the state." OCGA § 31-6-1. In determining whether new psychiatric beds are needed, SHPA Rule 272-2-.09 (14) (The Psych Rule) must be applied. This rule provides a four-step formula for assessing the number of psychiatric beds needed in a certain area. First, the service area of the proposed project is determined. Second, if any existing or already approved psychiatric facility *outside* the service area is operating below 85 percent capacity, and its service area overlaps that of the proposed project, then the population in the overlapping area is allocated to the existing or approved facility, and subtracted from the population served by the applicant. In this case, it is undisputed that there are underutilized facilities in both the Atlanta and Macon areas whose circular service areas overlap that of appellant's proposed project, and that the population of those overlapping areas must be allocated to the existing facilities, and not to McIntosh Trail's service area. Third, a prescribed formula is applied to the remaining population in the applicant's service area to determine the total number of beds needed in that service area. Lastly, the "beds available in the service area of the proposed service" are deducted from the total number needed, to arrive at the number of additional beds needed. Rule 272-2-.09 (14) (b) (3) (iv). Because of differing methods of measuring geographical areas, the parties' estimates of population allocated to the McIntosh Trail project varied, and thus the estimates of the number of total beds needed to serve that population, as determined under step three of the process, ranged from 29 to 32.

The main dispute between the parties to this appeal centers on step four of the process, specifically, whether 11 adult psychiatric beds at Clayton General Hospital, which is located within the service area of AMI's proposed project, should be subtracted from the total beds needed to arrive at the figure for "unmet bed need." AMI contends they should not be subtracted because, since Clayton General's occupancy rate exceeds 85 percent, those beds are not "available." The Superior Court disagreed, ruling instead that the plain language of the rule, and the only interpretation consistent with the Psych Rule as a whole, is that "beds available" means "beds in existence." Thus, the Superior Court held that since Clayton General's 11 beds were in existence, they should have been subtracted from the total beds needed to serve the population in the service area of AMI's proposed project, and since they had not been subtracted, the decision of the Board granting a CON must be reversed. We do not agree.

Even assuming, arguendo, that the Superior Court was correct in finding that the Clayton General Hospital beds should have been deducted in step four, we find that such a finding does not require, or even support, reversal of the Board's decision affirming the issuance of a CON to AMI. The Board's approval of the project did not de-

pend on a finding that Clayton General Hospital's 11 beds should not be subtracted from the total bed need. The Board expressly concluded that "[i]t is not necessary . . . to resolve the dispute over Step Four because AMI's proposed project is consistent with the applicable considerations and standards even if the beds at Clayton General are subtracted under the need methodology in the Psych Rule. . . . Even if the beds at Clayton General are subtracted, the methodology estimates a need for 18 to 21 beds at McIntosh Trail." Nothing in the Rule, or the applicable statutory standards, requires that the proposal be approved *only* if the number of beds sought in the proposal exactly equals the number of beds needed, as shown by the formula. The formula is merely a method for estimating need, and the Board's conclusion that a clear need for new beds was evident is not disputed. The Board concluded that the application for a CON need not be denied on the sole basis that the application proposes a few more beds than are shown to be needed unequivocally by applying the Psych Rule's bed need formula. The Board's reasoning in this regard was not erroneous as a matter of law, and was supported by substantial evidence in the record. It follows that the Superior Court's reversal of the Board's decision was improper, and must be reversed. See OCGA § 31-6-44 (i).

2. Because of our decision in Division 1, we must now address the merits of Charter's cross-appeal. In addition to applying the Psych Rule to determine if an unmet need exists for additional beds specifically dedicated to psychiatric services, the Rule also requires that where, as here, the psychiatric beds are sought to be added to a general hospital, the hospital must show a need for general hospital beds; otherwise, already existing general hospital beds can be converted to psychiatric beds without increasing unnecessarily the total amount of hospital beds in existence. The Rule states that "if psychiatric . . . bed need is shown, the hospital as a whole must show need for additional beds *according to the institution-specific general hospital bed need methodology* before beds can be added to the overall bed complement." Rule 272-2-.09 (14) (b) (3) (vii) (II). (Emphasis supplied.) The State Health Plan includes two alternative methods for determining general hospital need: the "institution specific" formula, referred to in the Rule, which applies when there is more than one hospital in the county, and the "county bed need" formula, which applies when a hospital is the only hospital in a given county. In the case sub judice, there would be a need for additional general hospital beds if the "county bed need" formula is used, but no additional beds would be necessary if the "institution specific" formula is used.

Charter contends that a literal reading of the Rule is necessary, and the application of the "institution specific" formula is required,

despite the fact that McIntosh Trail is the only general hospital facility in Spalding County. Accordingly, Charter contends that the Superior Court erred by approving the Board's use of the "county bed need" formula in this case. We agree with the Board and the Superior Court that to read the Rule in the manner urged by Charter "is to make it inconsistent with the overall approach of the State Health Plan to general hospital beds." Further, " '[t]he cardinal rule to guide the construction of laws is, first, to ascertain the . . . intent and purpose in enacting [them], and then to give [them] that construction which will effectuate the . . . intent and purpose.' [Cits.]" *DeKalb County v. Nall,* 178 Ga. App. 429, 430 (343 SE2d 113) (1986). This is true of rules enacted by an agency pursuant to a grant of legislative authority, as well as to acts of the legislature, since the rules have the force of law. *Cross v. Balkcom,* 102 Ga. App. 81, 83 (115 SE2d 783) (1960), reversed on other grounds, *Balkcom v. Cross,* 216 Ga. 530 (118 SE2d 185) (1961). Substantial evidence was presented, in the form of testimony from one of the drafters of the Rule, that the drafters' intent was to use the term "institution specific" in a generic, rather than a particular or technical, sense, encompassing whichever method would be appropriate to the facts under the State Plan. Since it is undisputed that McIntosh Trail is the only general hospital in Spalding County, the "county bed need" formula is appropriate. We are not persuaded by Charter's argument that the Supreme Court's holding in *Dogwood Square Nursing Center v. State Health Planning Agency,* 255 Ga. 694 (341 SE2d 432) (1986), requires a literal reading of the Rule in this case. *Dogwood Square* did not involve the construction of a rule, but rather concerned the Board's complete failure to apply a rule, and is thus distinguishable. Accordingly, the Superior Court did not err by approving use of the "county bed need" formula by the Board.

*Judgment affirmed in Case No. 75590. Judgment reversed in Case No. 75589. McMurray, P. J., and Beasley, J., concur.*

DECIDED FEBRUARY 22, 1988 —
REHEARING DENIED MARCH 4, 1988 —

*Charles L. Gregory,* for American Medical International.
*Richard L. Shackelford,* for Charter Lake Hospital.
*Michael J. Bowers, Attorney General, Susan L. Baranoff, Staff Assistant Attorney General,* for State Health Planning Agency.