LENOIR MEMORIAL HOSPITAL, INC., PETITIONER v. NORTH CAROLINA DEPARTMENT OF HUMAN RESOURCES, DIVISION OF FACILITY SERVICES, CERTIFICATE OF NEED SECTION, RESPONDENT

No. 8910DHR766

(Filed 17 April 1990)

1. **Administrative Law § 8 (NCI3d); Hospitals § 2.1 (NCI3d) — allocation of hospital beds — application denied — legislative purpose contravened**

    The North Carolina Department of Human Resources erred in its calculation of the number of beds made available for development under the 1987 State Medical Facilities Plan in that it should have included an adjustment for twenty-six psychiatric beds which had been approved for development but subsequently abandoned. The legislative purpose stated in N.C.G.S. § 131E-175(2) would be contravened by the policy decision to refuse to reallocate those needed beds.

    **Am Jur 2d, Administrative Law § 553.**

2. **Hospitals § 2.1 (NCI3d) — allocation of hospital beds — focus on numerical projections — other policy considerations excluded**

    An application for a Certificate of Need to convert twenty-two existing but unused acute care beds to psychiatric beds

was remanded where the Department of Human Resources denied the proposal after focusing exclusively on the numerical projection of the need for psychiatric beds to the exclusion of other important policy considerations.

**Am Jur 2d, Administrative Law § 553.**

3. **Hospitals § 2.1 (NCI3d); Administrative Law § 8 (NCI3d) — allocation of hospital beds — basis of decision**

The Department of Human Resources erred in deciding that petitioner's proposal to convert unused acute care beds to psychiatric beds was not needed where the Department of Human Resources relied exclusively on the State Medical Facilities Plan projections. The new Administrative Procedure Act allows administrative law judges to determine that a rule as applied in a particular case is void because it is not reasonably necessary to enable the agency to perform a function assigned to it by statute or to enable or facilitate the implementation of a program or policy in aid of which the rule was adopted. The Certificate of Need decision is not bound solely by the bed-need formula in the State Medical Facilities Plan and other criteria should be considered and weighed when the Agency is making its decision concerning this application. N.C.G.S. § 150B-33(b)(9).

**Am Jur 2d, Administrative Law § 553.**

APPEAL by petitioner from opinion filed 14 February 1989 by the North Carolina Department of Human Resources, the Division of Facility Services. Earlier, *Administrative Law Judge Thomas R. West* issued a Recommended Decision on 8 November 1988 in favor of the petitioner. Heard in the Court of Appeals 6 February 1990.

*Moore & Van Allen, by Noah H. Huffstetler, III and Margaret A. Nowell, for petitioner-appellant.*

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Meg Scott Phipps and Assistant Attorney General Richard A. Hinnant, Jr., for respondent-appellee.*

LEWIS, Judge.

Lenoir Memorial Hospital, Inc. ("Lenoir") is a general, acute care hospital located in Kinston, North Carolina. The primary serv-

**LENOIR MEM. HOSP. v. N.C. DEPT. OF HUMAN RESOURCES**

[98 N.C. App. 178 (1990)]

ice area for Lenoir is Lenoir County, and its secondary service area includes Greene and Jones Counties. For planning purposes, these three counties are included with twenty-six others in Health Systems Area ("HSA") VI by the 1987 State Medical Facilities Plan ("SMFP").

The 1987 SMFP showed that HSA VI had a total projected need in 1989 of 354 psychiatric beds, but only 308 existing beds. However, because 42 beds had previously been approved for development within the area, the unmet need for HSA VI was defined. in the 1987 SMFP to be 4 beds.

## HSA VI

### 1989 PSYCHIATRIC BED NEED DETERMINATION
(Excludes Chemical Dependency)

| 1989 Bed Need | Existing Inventory | Approved Changes | Adjusted Inventory | (Surplus) Deficit |
|---------------|--------------------|------------------|--------------------|-------------------|
| 354 | 308 | 42 | 350 | 4 |

In calculating the inventory of existing psychiatric beds in HSA VI, 26 beds which had been approved for the Community Hospital of Rocky Mount ("Community Hospital") but not yet developed were included in the "Adjusted Inventory" under the category of "Approved Changes." Community Hospital surrendered its Certificate of Need for those beds. The Respondent then gave notice "that there are 26 additional psychiatric beds available in Eastern Carolina Health Systems Area (VI)" which "brings the total needed for . . . HSA (VI) to 30 psychiatric beds." Six weeks later, the Respondent ("Agency") sent out a memorandum stating that the 30 beds previously announced were not available. That memorandum stated: "To: All Interested Parties: This decision is being made in the interest of fairness to all parties who may have wanted to apply for the psychiatric beds relinquished by the Community Hospital of Rocky Mount because ample notice could not be provided to all interested parties in a timely manner for a review this year."

At the time of the announcement, there were no operational psychiatric beds within the three-county area served by Lenoir. In response to the Agency's first announcement, Lenoir applied for a Certificate of Need to convert 22 of its existing but currently

unused beds for use as psychiatric beds. The Agency notified Lenoir that its application had been determined complete, evaluated but disapproved as "not consistent with need projections in the 1987 SMFP." The Agency did not adjust the Inventory to reflect the fact that the Certificate of Need for the development of 26 additional beds by Community Hospital had been surrendered.

Pursuant to G.S. § 131E-188(a), Lenoir appealed for a review by an Administrative Law Judge. After a hearing, the Administrative Law Judge issued a Recommended Decision which concluded, *inter alia*, that the Agency's decision was erroneous as a matter of law and recommended that the North Carolina Department of Human Resources (the "Department") grant a Certificate of Need to Lenoir. Under G.S. § 131E-188(a), this Recommended Decision was subject to further review by the Department. The Department upheld the decision of the Agency to deny a Certificate of Need to Lenoir, rejecting the Administrative Law Judge's recommendation. The petitioner, Lenoir Memorial Hospital, appeals.

The applicable standard of judicial review of a final decision of the Department of Human Resources with respect to an application for a Certificate of Need was set out in G.S. § 150A-51 (1983), *amended and recodified* at G.S. § 150B-51 (1985) (effective 1 January 1986). *In re Charter Pines Hosp. v. N.C. Dep't. of Human Resources*, 83 N.C. App. 161, 164-65, 349 S.E.2d 639, 642 (1986), *cert. denied*, 319 N.C. 105, 353 S.E.2d 106 (1987). Relying on that statute, the petitioner argues that the decision of respondent was "arbitrary, capricious and erroneous as a matter of law" in the Agency's determination (1) that Lenoir's proposal was inconsistent with the 1987 State Medical Facilities Plan (SMFP), and (2) that Lenoir's proposal is not needed. The decision of an administrative agency may be contested on the grounds that the Agency "[a]cted arbitrarily or capriciously." G.S. § 150B-23(a)(4). In *State ex rel. Comm'r. of Ins. v. N.C. Rate Bureau*, 300 N.C. 381, 269 S.E.2d 547, *reh'g denied*, 301 N.C. 107, 273 S.E.2d 300 (1980), "arbitrary and capricious" is defined as:

> Agency decisions have been found arbitrary and capricious, *inter alia*, when such decisions are "whimsical" because they indicate a lack of fair and careful consideration; when they fail to indicate "any course of reasoning and the exercise of judgment," *Board of Education [of Blount County] v. Phillips*, 264 Ala. 603, 89 So. 2d 96 (1956). . . . "The ultimate purpose

of rulemaking review is to insure 'reasoned decisionmaking' . . . ." Daye, [*North Carolina's New Administrative Procedure Act: An Interpretive Analysis*, 53 N.C.L.Rev. 833 (1975)] at 922, citing Verkuil, Judicial Review of Informal Rulemaking, 60 Va.L.Rev. 185, 230 (1974).

*Id.* at 420, 269 S.E.2d at 573.

### I: The Agency's Determination that Lenoir's Proposal was Inconsistent with the 1987 SMFP.

In examining the decision by the Agency that Lenoir's proposal was inconsistent with the 1987 SMFP, petitioner addresses two assignments of error: (A.) the calculation of the number of beds made available for development under the 1987 SMFP, and (B.) the failure to consider applicable provisions of the SMFP in the Agency's review of Lenoir's proposal.

### A. *The calculation of the number of beds.*

[1]   The North Carolina Administrative Code describes the procedure for applying for a Certificate of Need in 10 N.C. Admin. Code 3R.0313(b) (Oct. 1981). The 1987 SMFP requires that the Agency have an inventory and that inventory is to be "continuously updated" and "[b]ed counts are revised in the state's inventory as changes are reported and approved."

Petitioner contends that when Community Hospital surrendered its certificate to develop 26 psychiatric beds which had been included in the "approved changes" and "adjusted Inventory," the effect should have been to increase the number of beds available from 4 to 30. Petitioner supports its argument by (1) citing "the Agency's own statements" and (2) pointing to the adjustment made by the Agency for the beds at Duplin General Hospital.

(1) The Agency sent a letter to Community Hospital in which it requested the surrender of its 26 beds because the "need of 4 beds [as stated in the 1987 SMFP] was determined after placement in the inventory the 26 beds for which you are approved. Thus, the real need in the Service [Eastern Carolina HSA (VI)] Area is 30 beds." Also, the Agency sent an announcement to area mental health centers and to two newspapers stating the availability of 26 additional beds, "[bringing] the total needed for Eastern Carolina HSA (VI) to 30 psychiatric beds" after the Community Hospital beds were surrendered.

(2) When eight acute care beds at Duplin General Hospital were converted from acute care beds to psychiatric beds, an adjustment was made decreasing the number of beds available in the HSA VI area. During the deposition of Tim Ford, the Agency employee who was the project analyst for the review of Lenoir's application, the manner of adding and subtracting beds to the Inventory during the year was discussed.

> Q. Would it be fair to say, Mr. Ford, that the Agency policy would be that, if additional beds became available during the year, they were added to the Inventory, but that, if beds were, for some reason, turned back in, as the Community Hospital did in this case, those beds were not subtracted out of the Inventory?
>
> A. . . . This situation never came up before, . . . but it was addressed at this time.
>
> Q. So, prior to this particular decision, to your knowledge, there was no agency policy on what happens when beds are returned?
>
> A. This is correct, not to my knowledge.
>
> Q. Would it be fair to say that, in accordance with the policy decision that [the Chief of the Certificate of Need Section] made in this review, that we have discussed, beds could be subtracted from the need figure that is added to the inventory, making less need, but the reverse could not happen; that is, beds would not be subtracted from the inventory and added to the need in the middle of the year?
>
> A. Not in the middle of the year. . . .

The Respondent contends "policy did exist for the downward adjustment of bed need, but not for the upward adjustment" and that "to count the returned 26 beds in the bed need would have been an application of an unpromulgated rule and thus, invalid." Lenoir argues that "the Agency's refusal to adjust the inventory [to reflect the Community Hospital beds] violates the legislative intent underlying the Certificate of Need Law." *Stevenson v. City of Durham*, 281 N.C. 300, 303, 188 S.E.2d 281, 283 (1972), held:

> The primary rule of statutory construction is that the intent of the legislature controls the interpretation of a statute. In seeking to discover this intent, the courts should consider the

language of the statute, the spirit of the act, and what the act seeks to accomplish. (Citations omitted.)

"The General Assembly of North Carolina makes the following findings: . . . that citizens need assurance of economical and readily available health care." G.S. § 131E-175(2). The Agency itself stated, as discussed above, that "the real need [for psychiatric beds] in the Service [Eastern Carolina HSA (VI)] Area is 30 beds." The legislative purpose would therefore be contravened by the Agency's policy decision to refuse to reallocate those needed beds. Professor Charles Daye stated in *North Carolina's New Administrative Procedure Act: An Interpretive Analysis*, 53 N.C.L.Rev. 833, 922 n.410 (1975), that "[a]gency decisions have been regarded as arbitrary or capricious . . . when such decisions . . . amount to a willful disregard of statutory purposes."

The Agency has erred in its calculation of the number of beds made available for development under the 1987 SMFP in that it should have included an adjustment for the 26 psychiatric beds which had been approved for development by Community Hospital but were subsequently abandoned.

B. *Failure to consider applicable provisions of the SMFP.*

[2] According to N.C. Administrative Code 3R.1003(a)(4), policy statements are to be considered in the review process: The "policies related to acute care facilities . . . [and] psychiatric facilities . . . are used with other criteria . . . and need projections to determine whether applications proposing additional beds and services of these types may be approved under the certificate of need program." 10 N.C. Admin. Code 3R.1003(a)(4) (Jun. 1979). Appellant contends that Lenoir's proposal "must be considered as a whole in making Certificate of Need determinations, and that such decisions cannot be made on the basis of need projections alone."

Lenoir Memorial Hospital states that there are two "policy statements" which the Agency did not adequately consider in its review of the Lenoir application. (1) Because the utilization of Lenoir's acute care beds was less than the target occupancy rates set forth in the 1987 SMFP for two consecutive years, its facility is deemed to be chronically underutilized. The 1987 SMFP includes in its official policy statements an endorsement of the "conversion of underutilized existing facilities to uses for which there is a demonstrated need." Lenoir contends that its proposal to convert

22 chronically underutilized acute care beds to meet the "demonstrated need" for psychiatric care in its service area precisely implements these official policy statements. (2) Lenoir provided information in its application that the expected impact of the conversion would be a net decrease in the hospital's total cost per patient day of 3.1 percent. Appellant states that the proposed conversion of beds at Lenoir which would generate additional revenues is in keeping with the intent of the Certificate of Need Law to provide "economical . . . health care" for "the citizens of this State." G.S. § 131E-175(2).

The Agency stated that its reason for disapproving Lenoir's proposal was based solely on Lenoir's alleged inconsistency with the numerical projection of need contained in the 1987 SMFP. Since the Agency chose to focus exclusively on the numerical projection of the need for psychiatric beds to the exclusion of other important policy considerations, we remand this case to the Agency so that it can weigh the benefits of Lenoir's proposal against any alleged detriments in making its Certificate of Need determination.

II: The Agency's Determination that
Lenoir's Proposal was Not Needed

[3] Appellant argues that the Agency was arbitrary, capricious and erroneous as a matter of law in deciding that Lenoir's proposal was not needed because the Agency relied exclusively on the SMFP projections. The Agency's project analyst stated on deposition that "we have to look, first of all, at independent verification of need, and we look to the State's Medical Facilities Plan for that verification of need." Since there was no "independent verification of need" for psychiatric beds in HSA VI according to the calculations done by the Agency utilizing the SMFP projections, then there was no competitive or comparative review made of Lenoir's application. Lenoir contends that the Agency's refusal to consider "the compelling evidence set forth in Lenoir's application that there is a need for 22 psychiatric beds to be located in the three-county area which it proposes to serve" is reversible error.

The North Carolina Administrative Code states: "The correctness, adequacy, or appropriateness of criteria, plans, and standards shall not be an issue in a contested case hearing." 10 N.C. Admin. Code 3R.0420 (Oct. 1984). This regulation would prohibit consideration during appellate review of this contested decision of the adequacy of the 1987 SMFP projections. However, in 1987 the new

Administrative Procedure Act allowed administrative law judges to "[d]etermine that a rule as applied in a particular case is void because . . . (3) [it] is not reasonably necessary to enable the agency to perform a function assigned to it by statute or to enable or facilitate the implementation of a program or policy in aid of which the rule was adopted." G.S. § 150B-33(b)(9).

North Carolina appellate courts have not yet addressed the question of whether or not consideration of the actual need may be made when the applicant for a Certificate of Need appears to violate numerical projections such as those contained in the 1987 SMFP. Other jurisdictions have addressed this question and have concluded that the state plan may not be used as the sole determinant of the need for a proposal, even though consistency with the plan was one of the statutory review criteria. *Balsam v. Dep't of Health and Rehabilitative Services*, 486 So.2d 1341 (Fla. Dist. Ct. App. 1986); *American Medical Int'l v. Charter Lake Hosp.*, 186 Ga. App. 204, 366 S.E.2d 795 (1988); *Charter Medical of Cook County v. HCA Health Services of Midwest*, 185 Ill. App. 3d 983, 542 N.E.2d 82 (1989); *Martin County Nursing Center v. Medco Centers*, 441 N.E.2d 964 (Ind. Ct. App. 1982); *Irvington General Hosp. v. Dep't of Health*, 149 N.J. Super. Ct. App. Div. 461, 374 A.2d 49 (1977); *Sturman v. Ingraham*, 383 N.Y.S.2d 60, 52 A.D. 2d 882 (1976); *Roanoke Memorial Hospitals v. Kenley*, 3 Va. App. 599, 352 S.E.2d 525 (1987). The Agency cites two cases in which the courts held that the State did not err in refusing to deviate from its regulatory bed need methodology. *Health Quest Realty XII v. Dep't of Health and Rehabilitative Services*, 477 So.2d 576 (Fla. Dist. Ct. App. 1985); *Princeton Community Hosp. v. State Health Planning*, 328 S.E.2d 164 (W.Va. 1985). In distinguishing two cases on which the appellant relies (*Irvington and Sturman*), the Agency states: "[T]hese cases did not address the bed need issue within the context of a statutory mandate of SHP [State Health Plan] consistency." Appellate review of this issue, however, is allowed in North Carolina under the new Administrative Procedure Act, even when a statutory mandate exists. We hold that the Certificate of Need decision is not bound solely by the bed-need formula in the 1987 SMFP and that other criteria should be considered and weighed when the Agency is making its decision concerning Lenoir Memorial Hospital's application.

### III: Conclusion

Genuine issues of fact exist to preclude the granting of summary judgment in favor of Lenoir. However, we hold that the Agency has acted arbitrarily and capriciously (1) in its calculation of the number of beds made available for development under the 1987 SMFP, and (2) in failing to consider the positive impact on health care costs which would result from Lenoir's proposed conversion of presently unused beds. Additionally, the Agency's refusal to consider the alleged need for 22 psychiatric beds to be located in the three-county area which Lenoir serves is reversible error.

We remand this case to the Agency to reconsider Lenoir's application and the recommendations of the Administrative Law Judge.

Reversed and remanded.

Judges WELLS and COZORT concur.