A95A1086. THE MEDICAL CENTER, INC. v. STATE HEALTH PLANNING AGENCY et al.
A95A1087. COLUMBUS DOCTORS HOSPITAL, INC. v. THE MEDICAL CENTER, INC.
(464 SE2d 925)

POPE, Presiding Judge.

The Medical Center, Inc. ("TMC") provides obstetric and neonatal services to residents of Columbus, Georgia and the surrounding area. In January 1991, the State Health Planning Agency ("SHPA") approved TMC's application for a certificate of need to renovate certain areas of its hospital, including its obstetric unit. One month later, SHPA denied two applications for new perinatal services, which were filed by Columbus Doctors Hospital, Inc. ("Doctors") and St. Francis Hospital, Inc. ("St. Francis").

Doctors and St. Francis appealed the denial of their applications and the approval of TMC's application to the State Health Planning Review Board ("Board"). On February 20, 1992, after conducting a consolidated hearing on all three applications, a three-member panel of the Board affirmed SHPA's approval of TMC's application and the

denial of St. Francis' application. The panel, however, reversed SHPA's denial of Doctors' application.

In March 1992, TMC and St. Francis appealed the Board's decision to the Superior Court of Muscogee County. The superior court ruled that SHPA had erred in failing to conduct a consolidated review of all three applications, and that the error had not been cured by the Board's consolidated review of the applications. Consequently, on February 15, 1993, the superior court reversed the award of TMC's and Doctors' certificates of need and remanded all three hospitals' applications to SHPA for a comparative review to be conducted "as though none of the parties had been previously granted a certificate of need for their proposed perinatal projects."

The parties amended their applications, and on July 7, 1993, following completion of its review of the amended applications, SHPA rendered its second decision, wherein it again granted TMC's application and denied Doctors' and St. Francis' applications. Doctors and St. Francis again appealed to the Board. On August 9, 1993, prior to the Board's review of SHPA's second decision, SHPA adopted a new perinatal services rule ("New Rule"). See SHPA Rule 272-2-.09 (5). Following the adoption of the New Rule, St. Francis withdrew its application.

On May 12, 1994, the Board's Chairman ordered the commencement of a hearing before a three-member review panel including himself. Prior to the hearing, the Chairman determined that the New Rule governed Doctors' amended application. On June 30, 1994, the two other members of the panel (the "Board Majority") reversed SHPA's second decision and granted Doctors' application based on "unusual circumstances." The Chairman dissented on the grounds that Doctors did not have a past record of service to the underprivileged as required by the New Rule; that it did not meet the numerical need requirement of the New Rule; and that it did not meet the "urban county exception" to the need requirement. It is undisputed that the panel unanimously affirmed SHPA's approval of TMC's application.

TMC appealed the Board's decision regarding Doctors' application to the superior court on the ground that Doctors' application did not meet the requirements of the New Rule for the reasons stated in the Chairman's dissent. By order dated October 3, 1994, the superior court reversed the Board Majority's determination that there was a numerical need for Doctors' proposed perinatal services, but concluded that Doctors satisfied the urban county exception. The superior court also specifically found that Doctors' past record of service to the underprivileged was dismal. However, it declined to reverse the Board Majority's decision on that basis, and thus it subsequently affirmed the award of a certificate of need to Doctors.

We granted TMC's application for leave to appeal the superior court's October 3, 1994 order. TMC's appeal of that order was docketed as Case No. A95A1086. Doctors filed a timely notice of cross-appeal, and its cross-appeal was subsequently docketed as Case No. A95A1087.

### Case No. A95A1086

1. TMC contends that the superior court erred in affirming the Board Majority's decision that Doctors had met the requirements set forth in the New Rule. Before reaching this issue, however, we must first determine whether the superior court was correct in finding that the New Rule was applicable to Doctors' amended application.

The record in this case demonstrates that the New Rule was adopted after SHPA's 1993 decision to deny Doctors' amended application, but before the Board had conducted its review of that decision. Under such circumstances, the superior court correctly determined that the Board was required to apply the New Rule to Doctors' amended application. In Georgia it is well settled that "a reviewing [tribunal] should apply the law as it exists at the time of its judgment rather than the law prevailing at the rendition of the judgment under review." (Citation and punctuation omitted.) *Health Help Svcs. of Gainesville v. State Health Planning Agency*, 174 Ga. App. 640, 641 (1) (329 SE2d 628) (1985); see former OCGA § 31-6-21.1 (i).

2. Having reached this conclusion, we now address TMC's argument that the superior court erred in determining that Doctors had complied with the requirements of the New Rule. Specifically, TMC argues that Doctors failed to comply with Standard 8 (v) of the New Rule and that this alone was sufficient to reverse the Board Majority's decision. We cannot agree.

Standard 8 of the New Rule provides that: "An applicant for new or expanded Basic Perinatal Service or Neonatal Intermediate Care or Neonatal Intensive Care Service shall foster an environment which assures access to services to individuals unable to pay and regardless of payment source or circumstances by the following: (i) providing evidence of written administrative policies and directives related to the provision of services on a nondiscriminatory basis; (ii) providing a written commitment that unreimbursed services for indigent and charity patients in the services will be offered at a standard which meets or exceeds three percent of annual gross revenues for the service after Medicare and Medicaid contractual adjustments and bad debt have been deducted; (iii) providing a written commitment to participate in the Medicaid program; (iv) providing a written commitment to participate in any other public reimbursement programs available for perinatal and neonatal services for which the hospital is

eligible; and (v) providing documentation of the demonstrated performance of the applicant . . . of providing services to individuals unable to pay based on the past record of service to Medicare, Medicaid, and indigent and charity patients, including the level of unreimbursed indigent charity care." SHPA Rule 272-2-.09 (5) (c) (8).

In interpreting Standard 8 (v), it is undisputed that the superior court, like every agency or tribunal previously involved in this matter, unequivocally recognized Doctors' dismal record of past service to the underprivileged. Yet the superior court nevertheless determined that Doctors was in substantial compliance with Standard 8. We agree.

There is substantial evidence that Doctors complied with four of the five subparts of Standard 8. Although it is true that Standard 8 is written in the conjunctive, this fact is not determinative of the issue of whether each of its subparts must be met before an applicant can be awarded a certificate of need. The language included in the New Rule itself indicates where there is a requirement of strict compliance. For example, Standards 1, 3, 4, 6 and 11 each specify that the applicant shall comply with their provisions. Standard 8, however, does not contain such mandatory language, but instead only the vague instruction that the "applicant . . . shall foster an environment which assures access to services to" indigents. As the superior court noted, rigid and precise adherence to a standard, which by its terms does not demand such, may be relaxed in the reasonable discretion of the Board. See *American Med. Intl. v. Charter Lake Hosp.*, 186 Ga. App. 204 (366 SE2d 795) (1988).

Furthermore, we note that the environment that SHPA seeks to enforce will be fostered by compliance with any or all of the subparts of Standard 8. The Board Majority, in its discretion, was therefore free to conclude that the decision as to whether such an environment would be fostered in this case could be made by using the totality of the circumstances test. Id. at 206-207. Accordingly, it also was free to consider completion of one of Standard 8's subparts to be more important than another or to require less than full compliance with a particular subpart. This is especially true in light of the fact that SHPA has the authority to revoke a certificate of need if an applicant fails to continue to comply with Standard 8 after it first obtains its certificate. See OCGA § 31-6-40.2.

3. We reject TMC's contention that the trial court erred in determining that under Standard 5 (ii) of the New Rule Doctors fell within the "urban county exception" to the numerical need formula set forth in Standard 1. See SHPA Rule 272-2-.09 (5) (c) (1) and (5) (c) (5) (ii). Under Standard 5 (ii) "[e]xceptions to numerical need for a new Basic Perinatal Service may be considered by the Agency . . . to expand geographic access in an urban county where the county's projected female population ages 15 to 44 for the horizon year is less than

100,000 and the number of births in facilities in that county during the most recent year for which data are available at the time the application is filed is at least 10 percent greater than the number of births at such facilities in the fifth year preceding the most recent year; provided, however, that no more than 50 percent of such an increase in births shall have occurred in the most recent year and no more than 75 percent of such an increase in births shall have occurred in the most recent two years."

Pointing to outreach and education programs, the Board Majority found that Doctors' application for a new 16-bed obstetrics service should be approved under the above exception because it would improve geographic access to such programs. The superior court agreed. TMC argues, however, that Standard 5's use of the phrase "Basic Perinatal Service" is restricted to inpatient services, and therefore, outreach and educational programs should not have been considered by the Board Majority or the superior court in determining whether the exception was applicable. We find no merit to this argument. Hospitals can and do provide outpatient and education services in addition to inpatient care, and the term "inpatient services" is not used by SHPA as a restrictive term under the New Rule.

We also conclude that the Board Majority and superior court did not err in accepting Doctors' showing of a 9.93 percent increase in births as evidence of substantial compliance with the ten percent figure contained in the urban county exception. In determining whether a given application is consistent with the considerations set forth in OCGA § 31-6-42 and SHPA's rules, the Board Majority was entitled to place more emphasis on one consideration than another absent some mandatory language to the contrary. See *Hosp. Auth. of Gwinnett County v. State Health Planning Agency*, 211 Ga. App. 407 (438 SE2d 912) (1993). Moreover, such emphasis is entitled to great deference by a reviewing court. Id. In this case, the language found in Standard 5 (ii) was not mandatory, and thus we conclude that the Board Majority was entitled to forego a literal reading of the ten percent requirement. See *American Med. Intl.*, 186 Ga. App. at 206-207. The Board Majority's determination that the goal of Standard 5 (ii) was furthered as equally by a 9.93 percent birth rate increase as it would be by a ten percent increase was a rational exercise of discretion and is entitled to due deference by this Court. See *Clark v. Ga. Kraft Co.*, 178 Ga. App. 884 (345 SE2d 61) (1986).

4. Finally, we reject TMC's contention that the superior court should have reversed the Board Majority's award of a certificate of need to Doctors under the New Rule because Doctors failed to demonstrate that the costs associated with its proposed project were less than the current certificate of need threshold, as required by Standard 10. See SHPA Rule 272-2-.09 (5) (c) (10). Doctors included

its cost figures in its application, which was filed under the Old Rule, and it is undisputed that those figures were in compliance with the Old Rule. The requirement that cost be below the current certificate of need threshold was established by the New Rule, yet under that rule Doctors is prevented from amending its application to include cost figures that would satisfy the New Rule's cost threshold. Under such "Catch-22" circumstances, we conclude that the Board Majority did not err in failing to demand compliance with Standard 10 in determining that Doctors was entitled to a certificate of need. Moreover, we note that it is questionable whether Standard 10 is directly applicable to Doctors' application for Neonatal Intermediate (Level II) Service based on the service definitions found in SHPA Rule 272-2-.09 (5) (b) (1) and (5) (b) (3).

### Case No. A95A1087

5. Based on our holding above that the superior court did not err in affirming the Board Majority's decision to award a certificate of need to Doctors, we need not address the enumerations of error found in Doctors' cross-appeal.

*Judgments affirmed. Ruffin, J., concurs. Beasley, C. J., concurs in judgment only.*

DECIDED DECEMBER 5, 1995.

*King & Spalding, Richard L. Shackleford, Frank C. Jones, Rothschild & Morgan, Jerome M. Rothschild,* for The Medical Center, Inc.

*Michael J. Bowers, Attorney General, William W. Calhoun, Patricia Guilday, Assistant Attorneys General,* for State Health Planning Agency.

*Nelson, Mullins, Riley & Scarborough, Stanley S. Jones, Jr., Edward C. Brewer III, Page & Scrantom, W. G. Scrantom, Jr., Fleming, Drumond & Ray, Jennifer D. Malinovsky,* for Columbus Doctors Hospital, Inc.

*Parker, Hudson, Rainer & Dobbs, John H. Parker, Jr., Armando L. Basarrate,* amici curiae.