S98A0484. NORTH FULTON MEDICAL CENTER, INC.
v. STEPHENSON et al.
S98X0486. NORTHSIDE HOSPITAL, INC. et al. v. STEPHENSON
et al.
(501 SE2d 798)

SEARS, Justice.

This is the fourth appeal to this Court spawned by the State Health Planning Agency's ("SHPA's") attempts to satisfy the requirements of the State Health Planning Act ("the Act") in connection with a relocating Fulton County health care facility. In this appeal, we find that SHPA sanctioned the facility's relocation by promulgating a rule that, as applied, conflicts with the Act's express legislative requirement that before any relocating health care facility com-

---

mences operation, it must obtain a certificate of need ("CON"). Furthermore, we conclude that in promulgating its most recent relocation rule, SHPA acted beyond the scope of its administrative authority by creating a separate class of health care facilities that are not contemplated by the Act, and exempting that class from the regulations governing all other new facilities. Accordingly, we reverse in the direct appeal, Case No. S98A0484. Because the trial court properly concluded that mandamus was appellant's only viable remedy in this matter, we affirm in the cross-appeal, Case No. S98X0486.

In *North Fulton Med. Center v. Roach* ("*North Fulton I*"),[1] this Court addressed SHPA's decision that Northside Hospital was not required to obtain a CON under OCGA § 31-6-40 before relocating an ambulatory surgical facility to Alpharetta, 13 miles away from its original location. North Fulton Medical Center ("North Fulton"), a competitor of the relocated facility, had sued SHPA, seeking mandamus relief and judicial review, contending that SHPA was not authorized to exempt the relocating facility from CON requirements. After the trial court's dismissal, this Court held that neither the Act nor SHPA's rules exempted a relocating ambulatory surgical facility from CON requirements, and the matter was remanded to the trial court for its determination of whether mandamus or judicial review were appropriate remedies.

On remand, the trial court summarily dismissed the petition for judicial review, and proceeded on North Fulton's mandamus petition. On the eve of trial, however, SHPA announced that it had adopted a new rule,[2] that exempted relocating ambulatory surgical or obstetrical facilities from CON requirements ("Relocation Rule I"). The trial court refused to hear North Fulton's constitutional challenge to Relocation Rule I, and then dismissed the mandamus petition, ruling that North Fulton's proper course of remedy was a declaratory judgment challenge to the new rule. In *North Fulton Med. Center v. Roach* ("*North Fulton II*"),[3] this Court again reversed and remanded. Because North Fulton did not have an adequate remedy at law, it was allowed to raise all of its challenges to Relocation Rule I as part of its effort to secure mandamus relief in the trial court. Relocation Rule I later was struck down in its entirety as an unconstitutional attempt by SHPA to add to the legislative list of CON exemptions set forth in OCGA § 31-6-47 (a).[4]

After this Court's second remand, SHPA adopted another new

---

[1] 263 Ga. 814 (440 SE2d 18) (1994).
[2] OCRR § 272-2-.07 (1) (u) (1994).
[3] 265 Ga. 125 (453 SE2d 463) (1995).
[4] *HCA Health Svcs. v. Roach*, 265 Ga. 501 (458 SE2d 118) (1995).

rule, granting to itself the authority to (a) permit a relocating ambulatory surgical or obstetrical facility to commence operations at a new location if it meets certain minimal requirements, and (b) allow such a facility to bypass many of the standards and criteria applicable to all other such facilities regulated under the CON program ("Relocation Rule II"). Specifically, Relocation Rule II states that a CON applicant that otherwise meets the Rule's requirements is exempt from the requirements of OCRR § 272-2-.09 (1) through (19).[5] These exempted regulations include the service-specific standards applicable to CON applicants, including the requirement that all CON applicants must establish that a proposed new service area has a minimum population of 150,000 individuals.[6] While Relocation Rule II exempts certain relocating ambulatory surgical or obstetrical facilities from these requirements, all other CON applicants remain subject to them.

In this matter, even though the relocating Fulton County facility — the Northside Hospital Outpatient Surgery Center ("Outpatient Center") — had already moved to Alpharetta, and had been in operation for approximately two years, it applied to SHPA for a CON under the provisions of Relocation Rule II. Thereafter, in December 1995, SHPA granted the Outpatient Center a relocation CON, based upon Relocation Rule II.

North Fulton filed an administrative appeal of SHPA's decision, which was affirmed. North Fulton urges that it was precluded from raising a challenge to Relocation Rule II in that appeal. North Fulton then moved the superior court to award mandamus relief, arguing that Relocation Rule II conflicts with the Act, and is ultra vires. The superior court denied mandamus relief, and North Fulton appeals. The Outpatient Center cross appeals, arguing that because an alternative remedy at law existed, the trial court should not have considered North Fulton's mandamus request.

### Case No. S98A0484

As discussed, SHPA relied upon Relocation Rule II to issue a CON to the Outpatient Center more than two years after the Center had already relocated to the new site and commenced operation. As explained below, we find that this action by SHPA, based upon its interpretation and application of Relocation Rule II, was in direct

---

[5] These 19 subsections of the codified CON program, far too detailed to delineate here, comprise approximately 94 pages of the Official Rules and Regulations of the State of Georgia.

[6] See OCRR § 272-2-.09 (1) (b) 3 (iii). The record indicates that on three separate occasions, SHPA has determined that the relocating facility in this case failed to satisfy this rule.

conflict with the State Health Planning Act's requirement that both new and relocating facilities first must obtain a CON before commencing operations.[7] We also conclude that in enacting Relocation Rule II, SHPA acted beyond the limited scope of its administrative powers.

OCGA § 31-6-40 (b) states that, "Any person proposing to develop or offer a new institutional health service or health care facility *shall, before commencing such activity*, submit an application to [SHPA] and obtain a [CON] . . . unless such activity is excluded from the scope of [the Act]." (Emphasis supplied.)[8] As stated by this Court as recently as 1995, there is a clear distinction between the General Assembly's constitutional power to enact legislation governing the CON program, and SHPA's limited authority to promulgate rules to effectuate that legislation.[9] SHPA is authorized only to take action that carries into effect those laws already passed by the General Assembly; it has no constitutional authority to legislate, and it certainly is not authorized to establish rules that conflict with legislation.[10] In enacting Relocation Rule II, SHPA has done far more than merely "administer and effectuate an existing enactment of the General Assembly."[11] Rather, it has granted to itself the complete and unbridled authority to determine that certain facilities are exempt from § 31-6-40 (b)'s mandate that before commencing operation, all new ambulatory surgical and obstetrical facilities must apply for and obtain a CON.

Accordingly, Relocation Rule II not only conflicts with the explicit directives of the Act, it also evidences SHPA's unconstitutional usurpation of the General Assembly's power " 'to define the thing to which the statute [in this case, § 31-6-40 (b)] is to be applied.' "[12] It is well established that administrative agencies such as SHPA are not authorized to enlarge the scope of, or supply omissions in, a properly-enacted statute.[13] Nor may administrative agen-

---

[7] While it is not altogether clear that Relocation Rule II, on its face, sanctions the issuance of a CON two years after a relocating health care facility commences operation, this Court may assess the Rule's scope based upon its application and impact in this case. See *Austin Bldg. Co. v. Occupational Safety &c. Review Comm.*, 647 F2d 1063 (10th Cir. 1981).

[8] Relocating health care facilities are considered to be "new institutional health services" within the meaning of § 31-6-40 (b). *Phoebe Putney Mem. Hosp. v. Cardiology Assoc. of Savannah*, 267 Ga. 619, 621 (480 SE2d 595) (1997).

[9] *HCA Health Svcs.*, 265 Ga. at 502.

[10] Id.; See *Dept. of Transp. v. Del-Cook Timber Co.*, 248 Ga. 734, 738 (285 SE2d 913) (1982). SHPA's legislative grant of authority is set forth in OCGA § 31-6-21 (b) (4), which provides that it is authorized "to adopt, promulgate, and implement rules and regulations sufficient to administer the provisions of [the Act] including the [CON] program."

[11] *HCA Health Svcs.*, 265 Ga. at 502.

[12] Id. (quoting *Sundberg v. State*, 234 Ga. 482, 483 (216 SE2d 332) (1975)).

[13] 73 CJS, Public Administration Law & Procedure, § 32 (1983 & Supp. 1997).

cies change a statute by interpretation, or establish different standards within a statute that are not established by a legislative body.[14] Rather, as an administrative body, SHPA is authorized only to adopt and implement rules "sufficient to administer" the Act's provisions, including the CON program.[15] That limited grant of authority does not authorize SHPA to establish a separate class of health care facilities and then exempt that class from the Code's requirements. Put another way, SHPA cannot, consistent with its limited authority to implement the Act, determine which facilities must comply with the Act's CON requirements, or unilaterally create exclusions from those requirements.[16]

Thus, Relocation Rule II, (1) as applied in this case, conflicts with the provisions of OCGA § 31-6-40 (b), and (2) on its face, singles out relocating ambulatory surgical or obstetrical facilities, and exempts them from the requirements that are applicable to all other CON applicants, in excess of SHPA's limited administrative powers. Accordingly, we conclude that Relocation Rule II is invalid, and must be struck down.

### Case No. S98X0486

Cross-appellants Northside Hospital, Inc. and the Hospital Authority of Fulton County contend that the trial court erred as matter of law in reaching the merits of and refusing to stay North Fulton's mandamus action, because North Fulton could have sought judicial review to challenge Relocation Rule II. Because another remedy was available, cross-appellants argue that the ruling on North Fulton's mandamus petition being appealed in this matter should never have been issued.[17]

We disagree. In *North Fulton II*, this Court held that:

The general rule that mandamus does not lie where the petitioner has an adequate legal remedy is limited to cases in which the legal remedy is "equally convenient, complete and beneficial.". . . A [proposed alternative remedy] cannot be said to be equally convenient or beneficial where [as occurred in *North Fulton II*,] the ability to seek [it] did not

[14] Id.; see *Colgate Palmolive-Peet Co. v. Nat. Labor Relations Bd.*, 388 U. S. 355 (70 SC 166, 94 LE 161) (1949).

[15] See note 10, supra; OCGA § 31-6-21 (b) (4).

[16] Id.; *North Fulton I*, 263 Ga. at 814; see *Dept. of Human Resources v. Anderson*, 218 Ga. App. 528, 529 (462 SE2d 439) (1995) (invalidating regulation that was inconsistent with "clear authority of statute"); *Collins v. Prince Street Techs., Ltd.*, 220 Ga. App. 492, 494 (469 SE2d 700) (1996) (revenue regulation inconsistent with statute ruled invalid).

[17] See *Tyler v. Zant*, 255 Ga. 405 (339 SE2d 235) (1986).

arise until the day of the trial in the mandamus action. A contrary holding would condone the inherently unfair practice of changing the rules mid-game, which SHPA employed here. The appropriate inquiry is whether the legal remedy existed at the time mandamus relief *was sought*.[18]

Mandamus relief has been sought in this case since its inception in 1993. Since then, this Court has reversed and remanded the matter twice. By promulgating Relocation Rule II after the most recent remand, thereby attempting to circumvent the dictates of the General Assembly, SHPA did not alter the circumstances that existed at the outset of this case so as to render the legal remedy of judicial review more viable than when *North Fulton II* was decided. Our decision in *North Fulton II* established the law in this case, to which the trial court was bound on remand.[19] Furthermore, considering that, after the most recent reversal and remand (and for the second time in this matter), SHPA simply "changed the rules mid-game," were we to hold that mandamus relief was somehow precluded, we would "condone the inherently unfair practices . . . which the SHPA employed here."[20] Accordingly, the trial court did not err in reaching the merits of the mandamus action being appealed, and cross-appellants' contrary assertion is rejected.

*Judgment affirmed in Case No. S98X0486 and reversed in Case No. S98A0484. All the Justices concur.*

DECIDED MAY 26, 1998 —
RECONSIDERATIONS DENIED JUNE 26, 1998.

*Jones, Day, Reavis & Pogue, David J. Bailey, Michael J. McConnell, Ruth H. Gershon,* for North Fulton Medical Center, Inc.
*Powell, Goldstein, Frazer & Murphy, Randall L. Hughes, Kathlynn L. Butler,* for Northside Hospital, Inc. and Hospital Authority of Fulton County.
*Thurbert E. Baker, Attorney General, Brenda H. Cole, Deputy Attorney General, Alan Gantzhorn, Senior Assistant Attorney General, William A. Calhoun, Assistant Attorney General, Clyde L. Reese,* for Stephenson and State Health Planning Agency.

---

[18] (Emphasis supplied.) 265 Ga. at 127-128.
[19] See *Bruce v. Garges*, 259 Ga. 268, 270 (379 SE2d 783) (1989).
[20] *North Fulton II*, 265 Ga. at 128.