## A04A1015. CITY OF GRIFFIN v. McDANIEL et al.
### (606 SE2d 607)

PHIPPS, Judge.

Spalding County constructed a new correctional institution in the unincorporated portion of the county and connected it to the City of Griffin sewer system, with the city's permission. In return, the city sought to recover a connection fee of $378,730. When the county refused to pay, the city sued the Board of Commissioners of Spalding

County. The parties filed cross-motions for summary judgment, and the court issued a detailed order granting the commissioners' motion and denying the city's motion. The city appealed that order. Because the trial court misinterpreted the Georgia Development Impact Fee Act ("DIFA"), OCGA § 36-71-1 et seq., we reverse the denial of summary judgment to the city and the grant of summary judgment to the commissioners.

The city charges all new customers of the city sewer system a "capacity recovery fee." The city's policy on sanitary sewer connection describes the capacity recovery fee as "a one-time fee paid by each new customer of the City of Griffin Wastewater System to provide funds necessary to construct capacity for existing and proposed treatment facilities, pumping stations and major sewer lines." The city also charges a sewer tap fee of $750 to cover the cost of installing a tap connection to the public sewer. The capacity recovery fee is $2,200 per single family residence; for nonresidential uses, the fee is $2,200 per equivalent residential unit ("ERU"). The city's engineer determined that the number of ERUs for the correctional institution was 172.15, resulting in a capacity recovery fee of $378,730. Normally this fee must be paid before the city issues a building permit, but because the correctional institution is located in the unincorporated portion of the county it did not need a building permit from the city. The county did need approval from the city to connect to the city's sewer system, and the city gave such approval.

The county paid the actual costs of connecting the correctional institution to the city's sewer system, $27,925. The county also paid $40,538 to install a grinding device called a Muffin Monster, which prevents nonbiodegradable waste in the correctional institution's sewage from obstructing the sewer system.

In their motion for summary judgment, the commissioners argued that the capacity recovery fee amounted to an illegal development exaction because the city imposed the fee without following DIFA's procedural requirements for adopting an impact fee ordinance. The trial court agreed and granted summary judgment to the commissioners on that basis. The trial court also rejected the city's arguments that (1) its capacity recovery fee fell within an exemption DIFA created for municipalities and counties providing water and sewer service and (2) the county had agreed to pay the capacity recovery fee.

The intent of DIFA was to promote orderly growth and development by establishing uniform standards by which municipalities and counties may require that new growth and development pay a proportionate share, but no more than its proportionate share, of the cost of new facilities needed to serve new growth and development; to

establish minimum standards for the adoption of development impact fee ordinances by municipalities and counties; and to prevent duplicate and ad hoc development exactions.[1] DIFA defines a development impact fee as "a payment of money imposed upon development as a condition of development approval to pay for a proportionate share of the cost of system improvements needed to serve new growth and development."[2] A development exaction is defined as "a requirement attached to a development approval or other municipal or county action approving or authorizing a particular development project, including but not limited to a rezoning, which requirement compels the payment, dedication, or contribution of goods, services, land, or money as a condition of approval."[3] Development approval means "any written authorization from a municipality or county which authorizes the commencement of construction."[4]

Municipalities and counties that have adopted a comprehensive plan containing a capital improvements element are authorized to impose by ordinance development impact fees as a condition of development approval on all development, as provided for in DIFA.[5] Development exactions for anything other than project improvements cannot be collected by municipalities or counties except as development impact fees imposed in accordance with the provisions of DIFA.[6] Project improvements are defined as "site improvements and facilities that are planned and designed to provide service for a particular development project . . . and are not system improvements."[7] System improvements are "capital improvements that are public facilities and are designed to provide service to the community at large."[8]

1. The city claims that it is entitled to collect the capacity recovery fee pursuant to OCGA § 36-71-13 (c), which contains an exemption from DIFA's procedural requirements for municipalities and counties providing water and sewer service.

OCGA § 36-71-13 (c) provides:

Nothing in this chapter shall limit a municipality, county, or other governmental entity which provides water or sewer service from collecting a proportionate share of the capital

---

[1] OCGA § 36-71-1 (b) (2), (3), (4).
[2] OCGA § 36-71-2 (8).
[3] OCGA § 36-71-2 (7).
[4] OCGA § 36-71-2 (6).
[5] OCGA § 36-71-3 (a).
[6] Id.
[7] OCGA § 36-71-2 (14).
[8] OCGA § 36-71-2 (19).

cost of water or sewer facilities by way of hook-up or connection fees as a condition of water or sewer service to new or existing users, provided that the development impact fee ordinance of a municipality or county or other governmental entity that collects development impact fees pursuant to this chapter shall include a provision for credit for such hook-up or connection fees collected by the municipality or county to the extent that such hook-up or connection fee is collected to pay for system improvements. Imposition of such hook-up or connection fees by any governmental entity to pay for system improvements either existing or new shall be consistent with the capital improvement element of the comprehensive plan and shall be subject to the approval of each county, municipality, or combination thereof which appoints the governing body of such entity. The adoption, imposition, collection, and expenditure of such fees for system improvements by any governmental entity shall be subject to the same procedures applicable to the adoption, imposition, collection, and expenditure of the development impact fees by a county.

DIFA defines governmental entity as "any water authority, water and sewer authority, or water or waste-water authority created by or pursuant to an Act of the General Assembly of Georgia."[9]

The trial court held that the exemption contained in OCGA § 36-71-13 (c) covered only "small connection fees that are routinely charged by local governments and water authorities," such as the sewer tap fee charged by the city. Because the capacity recovery fee was not designed to recoup the actual costs of connecting a customer to the sewer system, the court held that the capacity recovery fee was not covered by the "limited exception" of OCGA § 36-71-13 (c).

The Georgia Department of Community Affairs (DCA), the agency responsible for administering DIFA,[10] has published a set of two guidebooks to familiarize local governments with DIFA's requirements, assist them in determining if they need or want an impact fee system and, if they do, show them how to adopt one. Those guidebooks include interpretations of various provisions of DIFA. Although we are "not bound to blindly follow" DCA's interpretation, we generally defer to a statutory interpretation by the agency responsible for administering or enforcing a statute when it reflects the meaning of

[9] OCGA § 36-71-2 (10.1).
[10] See Ga. Comp. R. & Regs. r. 110-12-2-.01 et seq.

the statute and comports with legislative intent.[11]

DCA has specifically interpreted OCGA § 36-71-13 (c) to "allow[ ] water and sewer departments of local governments to continue charging new development for a proportionate share of system improvements without passing an impact fee ordinance."[12] But if a local government does pass an impact fee ordinance, it must give credit against impact fees for system improvement charges embedded in hook-up or connection fees.[13]

Contrary to the interpretation urged by the commissioners, DCA has interpreted the second and third sentences of OCGA § 36-71-13 (c) to apply only to "governmental entities," as that term is defined by DIFA.[14]

> DIFA does not stipulate that local governments that provide their own water and sewer service through line agencies or public works departments must have a [capital improvements element] or establish formal service areas or service levels in order to continue charging for system improvements through hook-up fees. In contrast, water and sewer authorities are bound by all the administrative and procedural aspects of DIFA.[15]

DCA concludes that "[i]n effect, DIFA exempts local governments that provide their own water and sewer service[ ] and do not want to implement impact fee systems from some of the planning and bookkeeping requirements it imposes on authorities."[16]

OCGA § 36-71-13 (c) was clearly designed to allow local governments providing water or sewer service to recoup part of the capital costs of their facilities from new or existing users, as a condition of providing service to those users. Although the statute is not as clear with respect to whether DIFA's requirements will apply to those service providers,[17] we find that DCA's interpretation reflects the meaning of the statute.

---

[11] *Moulder v. Bartow County Bd. of Ed.*, 267 Ga. App. 339, 341 (599 SE2d 495) (2004); see also *Dept. of Community Health v. Gwinnett Hosp. System*, 262 Ga. App. 879, 882 (586 SE2d 762) (2003) (interpretation of statute by agency charged with enforcing or administering it entitled to great weight and deference).

[12] Georgia Department of Community Affairs, A General Overview of Impact Fees, Vol. 1, Sec. C. 14 (1992).

[13] Id.

[14] Id.

[15] Id.

[16] Id.

[17] See *Moulder*, supra (where statutory provisions are ambiguous, courts should give great weight to interpretation adopted by administrative agency charged with enforcing statute).

The first sentence of the statute provides that if a municipality, county, or governmental entity providing water or sewer service seeks to recoup its capital costs by way of a connection fee *and* collects a development impact fee, it must give credit for any portion of the connection fee used to pay for system improvements. This is consistent with DIFA's goals of preventing duplicate exactions and requiring that new growth and development pay a proportionate share, but no more than its proportionate share, of the cost of new facilities needed to serve new growth and development.

The second and third sentences of the statute specifically refer to "any governmental entity," not "a municipality, county, or other governmental entity" as in the first sentence of the statute. And the statute defines "governmental entity" as "any water authority, water and sewer authority, or water or waste-water authority created by or pursuant to an Act of the General Assembly of Georgia."[18] When interpreting statutes, "defined words shall have the meanings specified, unless the context in which the word or term is used clearly requires that a different meaning be used."[19] Here, the context in which "governmental entity" is used supports the position that the term was not meant to include municipalities and counties. In the second sentence of the statute, a distinction is made between a "governmental entity" and the "county, municipality, or combination thereof" that appoints the governing body of the governmental entity. In the third sentence, a governmental entity is held to the same standards as a county that imposes development impact fees. The statute was not drafted to allow the terms "municipality," "county" and "governmental entity" to be used interchangeably.

Applying OCGA § 36-71-13 (c) to this case, we find that the city is not a governmental entity subject to the requirements set forth in the second and third sentences of the statute. As a municipality providing sewer service, the city is entitled to collect a proportionate share of the capital cost of its sewer facilities as a condition of sewer service to new or existing users, without adopting an impact fee ordinance. In his affidavit, the city's engineer opined that the formula used to calculate the capacity recovery fee charged by the city is intended to allocate to each new user a portion of the approximate capital cost of the wastewater facilities that have been constructed to serve wastewater customers and that the current fee "represents a fair and reasonable proportionate share of the capital cost of existing sewer facilities." The county has not challenged the opinion of the city engineer in that regard. We hold that the city's capacity recovery fee

[18] OCGA § 36-71-2 (10.1).
[19] OCGA § 1-3-2.

falls within the exemption created by the first sentence of OCGA § 36-71-13 (c), and that the trial court erred in concluding otherwise.

2. The city claims that the trial court erred by concluding that the capacity recovery fee is an illegal development exaction. Given our conclusion in Division 1 that the capacity recovery fee is not subject to the requirements applicable to development impact fees, we need not determine whether the city's capacity recovery fee, which was not charged to the county as a requirement for development approval, would otherwise constitute a development exaction precluded by DIFA.

3. The city claims that the trial court erred by concluding that it had no valid contract with the county that would have required it to pay the capacity recovery fee. Given our holding in Division 1, the city does not need the county's consent to collect the capacity recovery fee. Thus, we need not address this issue.

*Judgment reversed. Smith, C. J., and Johnson, P. J., concur.*

DECIDED NOVEMBER 8, 2004 — ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Mullins, Whalen & Westbury, Andrew J. Whalen III*, for appellant.

*Jenkins & Olson, Frank E. Jenkins III, Brandon L. Bowen*, for appellees.

*Thurbert E. Baker, Attorney General, Daniel M. Formby, Deputy Attorney General, R. O. Lerer, Senior Assistant Attorney General, Cynthia A. Presto, Assistant Attorney General, Proctor & Chambers, Robert J. Proctor, Bradley A. Hutchins, John C. Clark*, amici curiae.