A06A2339. DEPARTMENT OF COMMUNITY HEALTH et al.
v. PRUITT CORPORATION et al.
(645 SE2d 13)

JOHNSON, Presiding Judge.

The Georgia Department of Community Health and its Commissioner Timothy P. Burgess (collectively, the "department") filed an application for discretionary review of the superior court's order reversing the department's final decision in this Medicaid reimbursement case. At issue is the department's decision regarding the reimbursement rate paid to a particular nursing facility for fiscal year 2004. We granted the application, and reverse the superior court's judgment.

The facts in this case are uncontested. The department reimburses nursing facilities that participate in the state Medicaid program according to a flat "per diem" rate that is facility-specific. A nursing facility's per diem rate represents the amount of Medicaid reimbursement to which the nursing facility is entitled per "Medicaid patient day." In order to receive Medicaid reimbursement, a nursing facility must enter into an agreement with the department.

Old Capital Inn, a Medicaid-reimbursed nursing facility, is a party to such an agreement with the department. The agreement itself does not set out the department's Medicaid reimbursement methodology. Instead, it incorporates by reference the department's nursing facility policies and procedures manual, which describes in detail the reimbursement methodology. The manual states that the department establishes a nursing facility's per diem rate based upon

data supplied by the facility in its "cost report," which is a department-provided form for the facility to report its revenues, expenses, and statistical data. Nursing facilities must submit cost reports annually by September 30 of each year for each fiscal year ending June 30. The department then audits the reports and establishes a new per diem rate for the facility for the following fiscal year based on that audit. When a nursing facility changes ownership, the department requires both the buyer and seller to submit separate cost reports based upon the respective periods of time that each owner operated the nursing facility.

Pruitt Corporation acquired Old Capital Inn from Integrated Health Services (IHS) on May 1, 2002. IHS submitted a ten-month cost report for the period of July 1, 2001 through April 30, 2002, and Pruitt submitted a two-month cost report based on the period of May 1, 2002 through June 30, 2002.

The department's policies and procedures manual states that where there is a change in ownership,

> [i]f the new owner's initial cost report contains less than six months worth of patient day data, when the initial cost report periods are used to set rates, the new owner will receive a rate based on the ***previous owner's last approved cost report*** inflated to current costs, as determined by the [department], or the costs from the new owner's initial cost report, whichever is lower.

(Emphasis supplied.) The phrase "last approved cost report" is not defined in the manual.

Pruitt's two-month cost report for fiscal year 2002 yielded a per diem rate of $109.66. IHS's per diem rate based upon its ten-month report for 2002 was $98.94. In setting the reimbursement rate for 2004, the department compared the per diem rate from Pruitt's two-month 2002 report to the per diem rate from IHS's 2001 cost report, adjusted for inflation, or $93.07. Based on this formula, the department determined that Old Capital Inn's per diem rate for 2004 would be $93.07. The department interpreted the phrase "last approved cost report" to mean the most recent cost report to have met all the conditions to serve as the basis for a per diem rate, meaning the report has been accepted, audited and have a June 30 end-date. The FY 2001 cost report was the most recent report which complied with those requirements.[1] Conversely, Pruitt maintained that the phrase means the last cost report submitted which would be acceptable, or

---

[1] Neither party contends that the FY 2003 cost report is relevant to the issues in this case.

"auditable and appropriate," based on various standards set forth in the manual, and that nothing in the manual required that it had been audited to be considered. Pruitt urged that IHS's 10-month 2002 cost report met those requirements and should have been used to set the reimbursement rate.

Pruitt filed a request for administrative review of the decision. The administrative law judge (ALJ) reversed the ruling holding, inter alia, that the "last approved cost report" language was ambiguous and should be construed against the department as the drafter of the manual.

The department appealed to the Commissioner of the Georgia Department of Community Health, who reversed the ALJ's decision. In the final decision of the agency, the Commissioner found that testimony at the hearing established that a cost report is "approved" if it has been audited. The Commissioner held further that the manual establishes that only 12-month cost reports ending on June 30 may be audited,[2] and that cost reports from unrelated owners cannot be combined. Pruitt appealed to the superior court, which reversed the Commissioner's decision and restored the ALJ's ruling. The department appeals from the superior court's judgment.

The department contends the superior court erred in holding that the administrative agency's final decision was "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." According to the department, the agency's final decision was not clearly erroneous and was supported by some evidence. We agree with the department.

A superior court's review of a final administrative decision is a review of the record made before the administrative agency.[3] The review of the administrative record by the superior court is to determine whether there is any evidence to support the administrative action.[4] Even evidence which barely meets the "any evidence" standard is sufficient, and the presence of conflicting evidence nonetheless meets that standard.[5] The superior court shall not substitute its judgment for that of the agency as to the weight of the evidence or questions of fact.[6] A superior court may reverse the final decision of the department only in certain specified instances, such as where the

---

[2] The manual provides that "[e]ach nursing facility must annually file a cost report with the [department] which covers a twelve-month period ending June 30." Policies and Procedures, Appendix D at D-2, 2.a.

[3] *Ga. Public Svc. Comm. v. Southern Bell*, 254 Ga. 244, 246 (327 SE2d 726) (1985).

[4] *Emory Univ. v. Levitas*, 260 Ga. 894, 897 (1) (401 SE2d 691) (1991).

[5] See *Harper v. L & M Granite Co.*, 197 Ga. App. 157, 160 (2) (a) (397 SE2d 739) (1990); *Hall v. Ault*, 143 Ga. App. 158, 159 (2) (237 SE2d 653) (1977).

[6] *Ga. Public Svc. Comm. v. Southern Bell*, supra; *Harper*, supra at 158.

administrative decision is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record.[7] The "clearly erroneous" standard set forth in OCGA § 50-13-19 (h) (5) is the same as the "any evidence" rule.[8]

When reviewed by a court, the administrative agency's final decision is entitled to deference.[9] This is because

> [a]gencies provide a high level of expertise and an opportunity for specialization unavailable in the judicial or legislative branches. They are able to use these skills, along with the policy mandate and discretion entrusted to them by the legislature, to make rules and enforce them in fashioning solutions to very complex problems.[10]

Their decisions are not to be taken lightly or minimized by the judiciary.[11] Judicial review which is too broad in scope would have the effect of substituting the judgment of a judge or jury for that of the agency, thereby nullifying the benefits of legislative delegation to a specialized body.[12]

In this case, the superior court held the department's decision was clearly erroneous in light of the substantial evidence on the whole record. The superior court apparently did not consider whether the record contained any evidence to support the final administrative decision.[13] Nor did it give the proper deference to the department's interpretation of its own rules.[14]

At the administrative hearing, the department's nursing home reimbursement manager testified that a cost report is considered "approved" when it has been reviewed, "either through desk review or field review by our auditors." The manager added: "We audit every cost report that we have that ends at 6/30 of any fiscal year and that is how we set reimbursement rates based on audited cost reports." While this testimony might be considered self-serving, it is from the reimbursement manager of the department charged with making and interpreting the rules governing Medicaid reimbursement for nursing facilities. Courts are required to give due deference to an

---

[7] OCGA § 50-13-19 (h) (5).

[8] *Hall*, supra at 159 (1).

[9] *Ga. Dept. of Community Health v. Satilla Health Svcs.*, 266 Ga. App. 880, 885 (598 SE2d 514) (2004); *Dept. of Community Health v. Gwinnett Hosp. System*, 262 Ga. App. 879, 882-883 (586 SE2d 762) (2003).

[10] *Dept. of Community Health v. Gwinnett Hosp. System*, supra at 882.

[11] Id.

[12] Id.

[13] See *Harper*, supra.

[14] See *Dept. of Community Health v. Gwinnett Hosp. System*, supra.

administrative body's interpretations of applicable statutes and implementation of administrative rules.[15]

In addition, the manual provides that "[o]nce a cost report becomes auditable and appropriate, the [per diem reimbursement rate] will then be calculated using the *audited* cost report as a basis." (Emphasis supplied.) Thus, the rate is calculated based on *audited* cost reports. The department's interpretation of "approved" as meaning "audited" is not unreasonable.

Finally, the phrase "previous owner's last approved cost report inflated to current costs" is modified by the phrase "as determined by the [department]." This indicates that the department determines what constitutes the "last approved cost report inflated to current costs."

If there is any evidence to support the final decision of the administrative agency, that decision must be affirmed.[16] If there is a conflict in the evidence, the "any evidence" test is satisfied.[17] Although the evidence in this case is by no means overwhelming, it is sufficient under the "any evidence" rule to support and authorize the final decision of the department.[18] This final agency determination "[is] not to be taken lightly or minimized by the judiciary."[19] We must defer to the department's decisions regarding policy, as well as to the department's interpretation and enforcement of its own rules.[20]

Given the evidence, as well as the deference to be afforded to an agency's interpretation of its own rules, the department did not err in finding that the 2001 cost report was the last approved cost report. The final administrative decision was not clearly erroneous, and the superior court erred in so holding.

*Judgment reversed. Miller and Ellington, JJ., concur.*

DECIDED MARCH 19, 2007 —
RECONSIDERATION DENIED APRIL 11, 2007 — ▮▮▮▮▮▮▮

*Thurbert E. Baker, Attorney General, Evan R. Kaplan, Michelle Townes, Assistant Attorneys General*, for appellants.

---

[15] See generally *Hosp. Auth. v. State Health &c.*, 211 Ga. App. 407, 408 (2) (438 SE2d 912) (1993) (an administrative agency's interpretation of a statute is entitled to great weight and deference when the agency has the duty of enforcing or administering the matter under consideration).

[16] See *Emory Univ.*, supra at 898 (2).

[17] *Bowman v. Palmour*, 209 Ga. App. 270 (1) (433 SE2d 380) (1993).

[18] See generally *Ga. Real Estate Comm. v. Hooks*, 139 Ga. App. 34, 36 (227 SE2d 864) (1976).

[19] See *Ga. Dept. of Community Health v. Satilla Health Svcs.*, supra at 888.

[20] See *Walker v. Dept. of Transp.*, 279 Ga. App. 287, 292 (2) (a) (630 SE2d 878) (2006).

*Arnall, Golden & Gregory, Glenn P. Hendrix, Richard E. Gardner III*, for appellees.