## A04A1894. FULTON GREENS, LIMITED PARTNERSHIP v. CITY OF ALPHARETTA et al.
### (612 SE2d 491)

RUFFIN, Chief Judge.

Fulton Greens, L.P. ("Fulton Greens") sued the City of Alpharetta and various city officials (collectively, "the City") for reimbursement of expenses associated with road improvements to Windward Parkway. The parties filed cross-motions for partial summary judgment regarding whether any reimbursement should be monetary, as requested by Fulton Greens, or in development impact fee credits, as asserted by the City. The trial court granted the City's motion and denied Fulton Greens' motion. Fulton Greens appeals, and for reasons that follow, we affirm.

Summary judgment is appropriate when no genuine issues of material fact remain and the movant is entitled to judgment as a matter of law.[1] We review a trial court's summary judgment ruling de novo, construing the evidence and all reasonable inferences in favor

---

[1] See *Simpson v. Infinity Select Ins. Co.,* 269 Ga. App. 679, 681 (605 SE2d 39) (2004).

of the nonmoving party.[2]

Viewed in this manner, the record shows that Fulton Greens owned a tract of land in Alpharetta that it sought to develop as a shopping center. In connection with the development, and to meet conditions imposed by the City, Fulton Greens agreed to build an extension to Windward Parkway. Fulton Greens and the City subsequently entered into a Private Development Agreement ("the Development Agreement") regarding, among other things, the Windward Parkway extension. Under the contract, Fulton Greens committed "[t]o construct, at its cost, the Windward Parkway extension improvements." The City, in turn, agreed:

> [t]o grant [Fulton Greens] post-ordinance impact fee credits, as determined in accordance with [Alpharetta's] Roads Impact Fee Ordinance, for right-of-way dedication and road improvements for the Windward Parkway extension. The credits shall be applied by the City against the road[s] impact fee due for [Fulton Greens'] development. To the extent that the credits exceed the roads impact fee due, the excess may, at the option of [Fulton Greens], be applied against other development related fees which may become due to the City, including, without limitation, the cost of building permits, and/or may be transferred to others pursuant to the provisions of the Roads Impact Fee Ordinance.

Fulton Greens constructed the extension and received impact fee credits from the City. According to Fulton Greens, however, the construction expenses exceeded the total impact fees chargeable against the shopping center development, and thus it had credits it could not use. Fulton Greens subsequently sought monetary reimbursement for the unused credits, as well as reimbursement for other alleged expenses not covered by the credits. The City denied Fulton Greens' claims, asserting, in particular, that the Development Agreement only required the City to reimburse Fulton Greens through impact fee credits, an obligation that it had fulfilled.

Unable to resolve the dispute, Fulton Greens sued the City for monetary reimbursement of all expenses not recovered through usable impact fee credits. The parties then filed cross-motions for partial summary judgment regarding whether the Development Agreement obligated the City to reimburse Fulton Greens through monetary payment or through impact fee credits only.[3] Deciding

---

[2] See id.

[3] Neither party sought summary judgment on the amount of reimbursement allegedly

these motions in the City's favor, the trial court determined that the Development Agreement "unambiguously provides for reimbursement in the form of credits and not cash." We find no error.

The Georgia Development Impact Fee Act ("the Act")[4] authorizes municipalities to "impose by ordinance development impact fees as a condition of development approval on all development."[5] The Act sets forth guidelines for calculating impact fees on development.[6] In assessing these fees, a municipality must give a developer who constructs "system improvements" that are required or accepted by the municipality impact fee credits for the present value of such improvements.[7] OCGA § 36-71-2 (19) defines "[s]ystem improvements" as "capital improvements that are public facilities and are designed to provide service to the community at large."[8] And OCGA § 36-71-7 (b) specifies that if

> a developer enters into an agreement with a . . . municipality to construct, fund, or contribute system improvements such that the amount of the credit created by such construction, funding, or contribution is in excess of the development impact fees which would otherwise have been paid for the development project, the developer shall be reimbursed for such excess construction, funding, or contribution from development impact fees paid by other development located in the service area which is benefitted by such improvements.

Citing OCGA § 36-71-7 (b) and an allegedly similar provision in Alpharetta's Roads Impact Fee Ordinance,[9] Fulton Greens argues that it is statutorily entitled to monetary reimbursement to the extent its impact fee credits exceed the impact fees applicable to the shopping center development. Notwithstanding OCGA § 36-71-7 (b),

---

owed Fulton Greens. They focused instead on the method of reimbursement.

[4] OCGA § 36-71-1 et seq.

[5] OCGA § 36-71-3 (a).

[6] See OCGA § 36-71-4.

[7] See OCGA § 36-71-7 (a).

[8] The City does not dispute that the Windward Parkway extension constitutes a "system improvement."

[9] Both parties contend that this City ordinance supports their arguments on appeal. Neither party, however, provides a record reference for this ordinance, and our review of the record reveals only that Fulton Greens attached to its summary judgment motion what appears to be an uncertified copy of one section of the ordinance containing handwritten deletions and additions. " 'It is well established . . . that judicial notice can not be taken by the superior court or this court of city or county ordinances, but they must be alleged and proved.' " *Flippen Alliance for Community Empowerment v. Brannen*, 267 Ga. App. 134, 136 (1) (601 SE2d 106) (2004). A party properly proves an ordinance by producing the original ordinance or a certified copy. See id. Because the record contains no proper proof of the Roads Impact Fee Ordinance, we cannot consider its language in our decision. See id. at 136-137.

however, the Act permits developers and municipalities to enter into *private* agreements governing reimbursement for system improvement construction:

> Nothing in this chapter shall be construed to prevent or prohibit private agreements between property owners or developers and municipalities . . . in regard to the construction or installation of system improvements and providing for credits or reimbursements for system improvement costs incurred by a developer including interproject transfers of credits or providing for reimbursement for project improvement costs which are used or shared by more than one development project.[10]

In this case, the parties entered into a private Development Agreement delineating their rights and obligations with respect to the Windward Parkway extension. The contract specifically notes that such private agreements may "provide for the . . . construction of System Improvements, the value and cost of which shall be used in lieu of the payment of impact fees and/or as an alternative method of payment of roads impact fees." And, as stated in the contract, the parties decided to execute the Development Agreement "to more specifically provide for," among other things, "the obligations of [Fulton Greens] and the City toward the construction of the designated System Improvements," including the Windward Parkway extension.

Fulton Greens further contends that the Development Agreement permits monetary reimbursement for excess impact fee credits. In addressing this argument, we must construe the agreement to determine the parties' intent.[11] And such construction involves a three-step process:

> Initially, the construction of the contract is a question of law for the court. First, if no ambiguity appears, the . . . court enforces the contract according to its terms irrespective of all technical or arbitrary rules of construction. That is, where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties. Secondly, if ambiguity does appear, the existence or non-existence of an ambiguity is itself a question of law for the court. Finally, a fact question arises only when

---

[10] OCGA § 36-71-13 (b).

[11] See *Mountain Aire Realty v. Birdie White Enterprises*, 265 Ga. App. 366, 368 (593 SE2d 900) (2004).

there appears to be an ambiguity in the contract which cannot be negated by the court's application of the statutory rules of construction.[12]

Viewing the contract as a whole,[13] we agree with the trial court that no ambiguity exists here. One purpose of the Development Agreement was to establish the parties' obligations with respect to the Windward Parkway extension. Fulton Greens agreed to construct the extension *at its cost*. In exchange, the City agreed to grant Fulton Greens impact fee credits for the road improvements. As expressed in the contract, these credits are to be applied against road impact fees due for the shopping center development. To the extent the credits exceed such fees, the contract permits Fulton Greens to apply the credits against other development-related fees owed the City or to transfer them to third parties.

Undoubtedly, OCGA § 36-71-7 (b) generally authorizes developers to seek monetary reimbursement for excess development fee credits. But municipalities and developers may enter into private agreements that otherwise govern, and potentially alter, the reimbursement or payment methods for system improvements.[14] By its plain terms, the private Development Agreement entered here obligates the City to compensate Fulton Greens for the Windward Parkway extension with impact fee credits that can be used in several ways. Nothing in the contract permits Fulton Greens to seek other reimbursement.

On appeal, Fulton Greens argues that the Development Agreement is ambiguous and that, when applied, the rules of contract construction show that the parties intended to permit monetary reimbursement pursuant to OCGA § 36-71-7 (b). As noted above, however, the Development Agreement clearly obligates the City to reimburse Fulton Greens for the Windward Parkway extension through impact fee credits, not cash. And under Georgia law, " '[a]mbiguity exists when the language may be fairly understood in more than one way; language is unambiguous if it is capable of only one reasonable interpretation.' "[15]

Because the Development Agreement is unambiguous, we need not apply the rules of contract construction to resolve any ambiguity.

---

[12] (Punctuation omitted.) Id.

[13] See id. at 368-369.

[14] See OCGA § 36-71-13 (b). See also *Hardin v. Macon Mall,* 169 Ga. App. 793, 794 (1) (315 SE2d 4) (1984) (" 'Absent a limiting statute or controlling public policy, parties may contract with one another on whatever terms they wish and the written contract defines the full extent of their rights and duties.' ") (citations omitted).

[15] *Eckerd Corp. v. Alterman Properties,* 264 Ga. App. 72, 77 (2) (589 SE2d 660) (2003).

Instead, we must enforce the contract pursuant to its clear terms, which only authorize payment to Fulton Greens through development impact fee credits. Accordingly, the trial court properly granted partial summary judgment to the City and denied partial summary judgment to Fulton Greens.[16]

*Judgment affirmed. Adams and Bernes, JJ., concur.*

DECIDED FEBRUARY 21, 2005 —
RECONSIDERATION DENIED MARCH 25, 2005.

*Bondurant, Mixson & Elmore, Frank M. Lowrey IV, John E. Floyd, William W. Gardner,* for appellant.

*Bovis, Kyle & Burch, Stuart S. Busby, C. Sam Thomas,* for appellees.

---

[16] See *Simpson,* supra at 682-683; *Mountain Aire,* supra at 369.