A10A2165. EFFINGHAM COUNTY BOARD OF
COMMISSIONERS v. PARK WEST EFFINGHAM, L.P.
(708 SE2d 619)

SMITH, Presiding Judge.

In this case of first impression, we are called upon to interpret the language of OCGA § 36-71-4, providing for the calculation of development impact fees for public facilities. Park West Effingham, L.P. ("Park West"), a developer, brought this declaratory judgment action against the Effingham County Board of Commissioners ("the county") and the Georgia Environmental Facilities Authority

("GEFA"), seeking, in addition to other relief, a declaration that Park West was not required to pre-pay impact fees pursuant to an agreement with the county. Park West contended in its petition that the agreement violated the provisions of the Georgia Development Impact Fee Act, OCGA § 36-71-1 et seq. ("DIFA"). The trial court agreed and granted summary judgment in favor of Park West on this issue, finding that the agreement was void because it violated OCGA § 36-71-4 (d), prohibiting the collection of impact fees before the issuance of a building permit. The county appeals, and we affirm.

> The intent of DIFA was to promote orderly growth and development by establishing uniform standards by which municipalities and counties may require that new growth and development pay a proportionate share, but no more than its proportionate share, of the cost of new facilities needed to serve new growth and development; to establish minimum standards for the adoption of development impact fee ordinances by municipalities and counties; and to prevent duplicate and ad hoc development exactions. DIFA defines a development impact fee as "a payment of money imposed upon development as a condition of development approval to pay for a proportionate share of the cost of system improvements needed to serve new growth and development."

(Citations and footnotes omitted.) *City of Griffin v. McDaniel*, 270 Ga. App. 349, 350-351 (606 SE2d 607) (2004). The subsection of DIFA at issue here, OCGA § 36-71-4 (d), provides:

> A municipal or county development impact fee ordinance shall provide that *development impact fees shall be collected not earlier in the development process than the issuance of a building permit* authorizing construction of a building or structure; provided, however, that development impact fees for public facilities described in subparagraph (D) of paragraph (17) of Code Section 36-71-2 may be collected at the time of a development approval that authorizes site construction or improvement which requires public facilities described in subparagraph (D) of paragraph (17) of Code Section 36-71-2.

(Emphasis supplied.) DIFA further provides that "all local ordinances or resolutions imposing development exactions . . . shall be brought into conformance with this chapter no later than November 30, 1992." OCGA § 36-71-12.

The county obtained financing from GEFA for the expansion and improvement of its water and sewer system. As a special condition of its loan with GEFA, the county agreed: "Effingham County will collect a total of $6.5 million in nonrefundable Impact and other Fees and/or cumulative letters of credit from developers. Letters must be in hand at GEFA prior to Contract Execution."

Park West, a real estate developer, is the builder of a subdivision of new homes in Effingham County. As part of the development process, Park West's predecessor in title, DJ Development Company, Inc.,[1] signed an agreement with the county dated April 5, 2006 and titled "Water, Sewer, and Re-use Water Service Agreement (Impact Form)" ("the agreement"). Section 5 of the agreement, "Impact Fees; Re-Use Fees," provides: "To assist in the payment of the cost of constructing the County's water supply and distribution and sewage collection and treatment systems, the Developer shall pay to the County impact fees as established by ordinance of the Board of Commissioners. . . ." Section 6 of the agreement, "Guaranty and Security," provides:

> Subject to the provisions of the following paragraph, the Developer and/or its permitted successors and assigns shall guarantee to the County the payment of $1,245,360.00, which represents 1/2 of the total estimated water and sewer impact fees that will be generated by the Project based upon the per ERU ["equivalent residential units"] water and sewer impact fees currently in effect. The Developer's guarantee shall be secured by an irrevocable Letter of Credit in favor of the Board of Commissioners of Effingham County and the Georgia Environmental Facilities Authority, to be delivered within ten (10) days of the execution of this Agreement. The amount of the Letter of Credit shall not be reduced until the County has received the water and sewer impact fees, and re-use capacity fees due for 1/2 of the total estimated ERUs included within the Project. Thereafter, the amount of the Letter of Credit may be reduced annually effective the 1st day of the month following the month in which potable water, wastewater collection, and re-use water are available to the Project at the connection point, so that the amount of the Letter of

---

[1] In its petition, Park West also sought a declaration that it was not bound by the agreement executed by its predecessor in title and not assigned to it. But, as the trial court noted, the parties agreed to bifurcate this issue, and we do not reach it because we affirm the trial court's finding that the contract is void.

Credit does not exceed the total remaining estimated water and sewer impact fees associated with the Project build-out.

The Developer anticipates a build-out period of 10 years for the Project, or 60.1 ERUs per year. Based upon this Project build-out period, the Developer agrees to pay water and sewer impact fees and re-use capacity fees (if applicable) of not less than $297,152.00 per year for the 10-year Project build-out period. The first of such payments will be due, unless the County sooner receives all or part thereof, one year from the last day of the month in which potable water, wastewater collection, and re-use water are available to the Project at the connection point (the "Annual Payment Guaranty Due Date"), with subsequent annual payments due on the same date of each succeeding year through the term of the contract (unless the County sooner receives payment thereof). This amount represents the estimated sum due annually for water and sewer impact fees based on the current impact fees. . . . The County shall submit a notice of any shortfall in the collection of annual water and sewer impact fees and re-use water capacity fees not less than sixty (60) days before each anniversary of the Annual Payment Guaranty Due Date. The Developer shall have thirty (30) days to review such statement, ask for supporting information, and/or challenge the statement (the "Review Period"). The Developer shall fund any shortfall in the collection of annual water and sewer impact fees and re-use capacity fees by certified check, money order, or other certified funds within thirty (30) days after the end of the Review Period. In the event Developer does not pay the County the shortfall within said period, the County may draw the entire Letter of Credit.

On March 18, 2009, the county served upon Park West a "Notice of Shortfall" seeking payment of approximately $700,000 for impact fee payments. This notice sought payment of impact fees on the basis of the percentage provided for in the contract, without consideration of whether building permits had been issued. In fact, no building permits had been issued corresponding with the amount sought in the Notice of Shortfall.

Park West filed a challenge to the county's Notice of Shortfall in accordance with the agreement. It then filed this action seeking a declaration that it did not owe any pre-payment of impact fees. The county then attempted to call Park West's letter of credit, but Park West obtained a temporary injunction forbidding that action.

As the trial court observed, the language of the agreement requires impact fees to be paid prior to the issuance of a building permit, in violation of OCGA § 36-71-4 (d). GEFA in its pleadings below[2] agrees with this interpretation:

> GEFA does not, has not, nor will it in the future construe this or any other loan agreement in derogation of Georgia law, including DIFA. Inasmuch as the loan agreement between GEFA and the county appears to direct Effingham County to collect impact fees or otherwise raise revenues, GEFA is willing to amend its loan agreement to make it clear that the impact fee should be collected only as prescribed by Georgia law. Furthermore, GEFA's sole focus is ensuring that Effingham County repays its obligations to GEFA under the Loan Agreement.

The county argues that it may contract with a developer on any terms agreeable to both, quoting *Fulton Greens, L.P. v. City of Alpharetta*, 272 Ga. App. 459 (612 SE2d 491) (2005):[3] "Absent a limiting statute or controlling public policy, parties may contract with one another on whatever terms they wish and the written contract defines the full extent of their rights and duties." Id. at 463, n. 14. But the county overlooks the controlling issue here: a limiting statute *is* present. OCGA § 36-71-4 (d) forbids the pre-payment of impact fees.

"An agreement to violate [a statute] would be unlawful and against the public policy. . . . Such contracts are unenforceable. OCGA §§ 13-8-1, 13-8-2; *Moore v. Dixon*, 264 Ga. 797, 799-800 (2) (452 SE2d 484) (1994)." *Taylor v. Kennestone Hosp.*, 266 Ga. App. 14, 22 (4) (b) (596 SE2d 179) (2004). Parties to a contract cannot agree to alter state law. *Maner v. Chatham County*, 246 Ga. App. 265, 266-267 (540 SE2d 248) (2000).

The county also argues that the agreement does not *require* pre-payment of impact fees, and that any violation of the statute was avoidable and thus "only collateral or remotely connected" to the agreement, citing *Shannondoah, Inc. v. Smith*, 140 Ga. App. 200, 202 (230 SE2d 351) (1976). According to the county, Park West could

---

[2] GEFA is not a party to this appeal.

[3] In *Fulton Greens*, a developer chose to construct certain public improvements itself. It then sought cash reimbursement from the city in lieu of impact fees pursuant to OCGA § 36-71-7 (b). But we noted that OCGA § 36-71-13 (b) explicitly permits developers and municipalities to provide by contract for the method of reimbursement, and that the developer and the city had agreed to reimbursement in the form of impact fee credits, not cash. Id. at 463-464.

avoid pre-paying impact fees by building enough houses to meet the contractual requirement, and "the issue of pre-payment of impact fees would not have arisen at all." This reasoning, the county contends, brings the agreement within the purview of *Shannondoah*. We disagree.

In that decision, Shannondoah, Inc. by contract granted Smith the privilege of operating a tavern for a stated period, in exchange for certain payments to the corporation. When Shannondoah brought suit for breach of the contract, Smith asserted that the contract was illegal because he had failed to obtain a liquor license as required by the contract. *Shannondoah*, supra at 201. We rejected that argument, noting that a violation of law was not *required* by the contract and that any violation was merely "incidental to contract performance." Id. at 203. Smith had obtained a liquor license for part of the period in question, and "the evidence [did] not show that Smith had to, or in fact did, violate the law in order to perform under the contract." Id.

In contrast, here the evidence shows that the agreement itself, drafted by the county, is in violation of OCGA § 36-71-4 (d) in its basic purpose: the collection of impact fees to repay the county's loan from GEFA. It calculates the payment of impact fees not in reference to the issuance of building permits, as required by the statute, but as a sum certain. It further provides for a guarantee of the payment of a minimum stated amount on a yearly basis for a ten-year period, and an irrevocable letter of credit to be provided immediately for one-half the total amount owed. The letter of credit and the minimum payment constitute pre-payment of impact fees for the purpose of retiring the county's debt with GEFA. This is not merely collateral or incidental to performance of the agreement, but constitutes the entire method of calculating, collecting and enforcing payment. As such, it violates OCGA § 36-71-4 (d) by requiring the pre-payment of impact fees. The trial court did not err in granting Park West summary judgment on this issue.

*Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED MARCH 23, 2011 — ▮

*Zipperer, Lorberbaum & Beauvais, Eric R. Gotwalt*, for appellant.

*Claude M. Kicklighter, Jr.*, for appellee.